Steven L. Taggart, Esq., ISB No. 8551
OLSEN TAGGART PLLC
P. O. Box 3005
Idaho Falls, ID 83403
Telephone: (208) 552-6442
Facsimile: (208) 524-6095
Email: staggart@olsentaggart.com

*Attorney for Bolton Law, PLLC*

Tecla Druffel, ISB No. 8725
TEC LAW, PLLC
P.O. Box 323
Lewiston, ID 83501
Telephone: (208) 743-9569
Fax: (888) 877-4307
Email: tecla@tec-law.net

*Attorney for Kourtney Jones*

JEFF ANDREWS, P.C.
Jeffrey H. Andrews, ISB No. 4935
8884 N. Government Way Suite "C"
P.O. Box 2246
Hayden, ID 83835
Telephone: (208) 762-5554
Fax: (208) 762-5551
jeffandrewslaw@yahoo.com

*Attorney for Zachary Tannar Riekena*

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| In Re:<br><br>RIEKENA, AMANDA MARIE<br><br>Debtor. | Case No. 26-20041-BRW<br><br>Chapter 7<br><br>**MOTION TO DISMISS, ABSTAIN OR RETROACTIVELY ANNUL THE AUTOMATIC STAY** |

Respondents Zachary Tannar Riekena, Kourtney Jones, and Bolton Law, PLLC (collectively, the "Respondents"), by and through their respective counsel, hereby submit this *Motion to Dismiss, Abstain or Retroactively Annul the Automatic Stay* in that Debtor Amanda Marie Riekena's Chapter 7 bankruptcy was filed in bad faith under 11 U.S.C. § 707(b)(3), or the Court should abstain under 28 U.S.C. § 1334(c)(1), or retroactively annul the stay as set forth below.

## I. INTRODUCTION

This Motion requests one of three forms of relief.

First, the Debtor's Chapter 7 bankruptcy should be dismissed as a bad faith filing. The primary driver of the bankruptcy was that the Debtor was sanctioned by the state divorce court on the morning of February 2, 2026 for failing to comply with discovery. To head that off, the Debtor filed a few hours later a "skeleton" petition. But, the state court's determination to sanction was immediately effective when announced from the bench. The case law is also clear that bankruptcy is inappropriate when the driver is a litigation tactic, as is here.

Second, the Court has alternative to finding bad faith. The Court could simply abstain without making that finding, sending the parties back to the state court.

Third, a final option is to retroactively annul the automatic stay, allowing the divorce court to proceed.

## II. RELEVANT FACTUAL BACKGROUND

1. The parties' divorce proceeding was filed on December 26, 2024.

2. The divorce has been lengthy and contentious.

3. On the morning of February 2, 2026, the parties appeared before Idaho Magistrate Judge Walsh for a hearing regarding sanctions against Debtor for failure to comply with discovery requirements.

4. At that hearing, the court orally ruled from the bench, sanctioning the Debtor and granting default on all provisions relating to the division of property as a penalty. Here is the relevant portion of the hearing transcript:

> THE COURT:
>
> . . .

> The rule requires the exchange of that information, that we don't have that, and so left with this situation where we just don't have this information. There's no end in sight to this problem, and this is brought as a motion for sanctions after we've had a motion to compel.
>
> And so given those circumstances, would grant the motion for sanctions, would enter default. I am always loathe to enter default as a sanction, because, again, trial is meant for that adversary process where we challenge information, challenge evidence. But with relation to the financial situation, would enter default with respect to the financials, the parties' financials, so debt, property, tax.
>
> . . .
>
> THE COURT: So default would be granted on paragraphs beginning 18, 19, 20, 21, 22, 23, 24, 25, and 26. And again, as I indicated, I think 24, 25, and 26, and 23, I think that that would just simply not be disputed. That relates to indemnification, revocation of beneficiary, so would enter default on that as well. Twenty-seven, which relates to retirement accounts, and that will be subject to the default. If you'll prepare the order and the default, Ms. Jones.
>
> MS. JONES: Yes.

Transcript of Proceedings, Doc. 47, pg. 23, ll. 25 – p. 24, ll. 13; p. 26, ll. 15-24.

5. Later that same day, February 2, 2026, the Debtor filed a bare bones chapter 7 bankruptcy petition for the primary purpose of interfering with the state court's decision. Doc. 1.

6. Debtor in her Schedules, filed under oath, specified that the family home located at 2354 West Evening Star Road, Post Falls, Idaho was worth $742,900. Doc. 26, pg. 3, § 1.1.

7. Debtor in her Schedules, filed under oath, specified that the family home had two liens, one for $388,134.23 and the other of $185,369.19. *Id.*, pgs. 12-13, §§ 2.1 and 2.2.

8. That meant that the home, according to the Debtor, had equity of $202,765.04.

9. The Debtor did not claim any homestead exemption. *Id.*, pgs. 10-11.

10. The Debtor intends to surrender the family home. Doc. 30, pg. 1

11. The Debtor claimed a single vehicle, a 2004 Honda Accord worth $800.00. *Id.,* pg. 4, § 3.1.

12. The Debtor did not claim any exemption for the 2004 Honda Accord. *Id.*, pgs. 10-11.

13. The unsecured debts break down as follows:

a. Loans from family, friends and associates -- $43,500.00

b. Legal Fees for Divorce -- $75,707.30

c. Other -- $20,836.61

d. Unknown – 7 individual debts

*Id.*, pgs. 15-26.

14. The sole legal action involving the Debtor in the year before filing the bankruptcy was her divorce. Doc. 28, pg. 3, § 9.

15. Within 1 year of filing the bankruptcy the Debtor had not had any property repossessed, foreclosed, garnished, attached, seized or levied. *Id.*, pg. 3, § 10.

## III. APPLICABLE LEGAL STANDARDS

### A. Standard for Dismissal

Under 11 U.S.C. § 707(a) the Court can dismiss a case for "cause". The items listed in the statute are "merely illustrative and not an exhaustive listing." *In re Tanguay*, 206 B.R. 575, 577 (Bankr. M.D. Fla.1997).

11 U.S.C. § 707(b)(3) specifies:

> (3) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in paragraph (2)(A)(i) does not arise or is rebutted, the court shall consider—
>
> (A) whether the debtor filed the petition in bad faith;

The party seeking dismissal of a bankruptcy petition bears the burden to show such is justified by a preponderance of evidence. *Baroni v. Seror (In re Baroni)*, 36 F.4th 958, 966 (9th Cir. 2022).

The standards for dismissal for a Chapter 13 and Chapter 11 case also apply in a Chapter 7 case. *In re Mitchell*, 357 B.R. 142, 153-54 (C.D. Cal. 2006). The determination of bad faith involves the following analysis:

> First, the Court must evaluate whether, in light of all the relevant facts and circumstances, it appears that the debtor's intention in filing a bankruptcy petition is inconsistent with the Chapter 7 goals of providing a "fresh start" to debtors and maximizing the return to creditors.12 *See Powers*, 135 B.R. [980 Bank C.D. Cal. 1991)] at 991–92; *Marshall*, 298 B.R. [670] at 681; See also *In re De La Rosa*, 91 B.R. 920, 922 (Bankr.S.D.Cal.1988); *In re Diego*, 6 B.R. 468, 469 (Bankr.N.D.Cal.1980). In making this determination, the Court will consider the following factors: (1) whether the debtor has a likelihood of sufficient future income to fund a Chapter 11, 12, or 13 plan which would pay a substantial portion of the unsecured claims; (2) whether the debtor's petition was filed as a consequence of illness, disability, unemployment, or some other calamity; (3) whether the schedules suggest the debtor obtained cash advancements and consumer goods on credit exceeding his or her ability to repay them; (4) whether the debtor's proposed family budget is excessive or extravagant; (5) whether the debtor's statement of income and expenses is misrepresentative of the debtor's financial condition; (6) whether the debtor has engaged in eve-of-bankruptcy purchases; (7) whether the

> debtor has a history of bankruptcy petition filings and case dismissals; (8) whether the debtor intended to invoke the automatic stay for improper purposes, such as for the sole objective of defeating state court litigation; and (9) whether egregious behavior is present. See [*United States Trustee (In re] Price*, 353 F.3d [1135 (9th Cir. 2004)] at 1139–1140; *Leavitt [v. Soto (In re Leavitt)],* 171 F.3d [1219] [9th Cir. 1999)] at 1224; *Marshall*, 298 B.R. at 681. As in Chapter 11 and Chapter 13 cases, this Court finds that no single criterion should be considered dispositive, but rather all of the facts in a case must be evaluated. See *Powers*, 135 B.R. at 991–92; *Marshall*, 298 B.R. at 681. Finally, the Court also concludes that neither malice nor fraudulent intent by the debtor is required for a finding of bad faith under § 707(b)(3). See *Leavitt*, 171 F.3d at 1224.
>
> *In re Mitchell*, 357 B.R. 142, 155 (Bankr. C.D. Cal. 2006) (emphasis added).

One clear factor supporting dismissal from the Chapter 11 context is “the case is essentially a two-party dispute capable of prompt adjudication in state court.” *In re St. Paul Self Storage Ltd. Partnership*, 185 B.R. 580, 583 (9th Cir. BAP 1995) (citations omitted).

Lastly, Idaho cases have dismissed bankruptcies filed to dodge state court litigation. *See In re Bootjack Dairy M&D, LLC*, 654 B.R. 368, 386-87 (Bankr. D. Idaho 2023), *In re Little,* 657 B.R. 873, 877-80 (Bankr. D. Idaho 2024) (“an attempt to obtain a more favorable outcome in their ongoing litigation”).

B. Standard for Abstention

28 U.S.C. § 1334(c) authorizes abstention “in the interest of justice, or in the interest of comity with State courts or respect for State law.”

The Ninth Circuit held that “the bankruptcy court should avoid incursions into family law matters out of consideration of court economy, judicial restraint, and deference to our state court brethren and their established expertise in such matters.” *In re McDonald*, 755 F.2d 715, 717 (9th Cir. 1985).

“[T]he federal interest is in not having bankruptcy used as a weapon in divorce proceedings.” *In re Roberge*, 188 B.R. 366, 370 (E.D. Va. 1995).

*In re Thiel*, 2015 WL 2398555, at *6 (Bankr. D. Idaho 2015): The Court directed the parties to pursue their claims stemming from terms of an agreement negotiated in a divorce action back to the state court quoting *Donald v. Donald (In re Donald)*, 755 F.2d 715, 717 (9th Cir.1985) ("It is appropriate for bankruptcy courts to avoid incursions into family law matters out of consideration of court economy, judicial restraint, and deference to our state court brethren and their established expertise in such matters."). "Even when a federal question is presented, federal courts decline to hear disputes which would deeply involve them in adjudicating domestic matters." *Id*., *quoting Thompson v. Thompson*, 798 F.2d 1547, 1558 (9th Cir.1986).

C. Standard for Retroactive Annulment of the Automatic Stay

> . . . § 362(d) "gives the bankruptcy court wide latitude in crafting relief from the automatic stay, including the power to grant retroactive relief from the stay." Id.7 Retroactive relief validates acts which violate the automatic stay and would otherwise be void. *Id*. [*Schwartz v. United States (In re Schwartz*), 954 F.2d 569, 572 (9th Cir. 1992)] at 573; *Lone Star Sec. & Video, Inc. v. Gurrola (In re Gurrola)*, 328 B.R. 158, 172 (9th Cir. BAP 2005); *see also E. Refractories Co. v. Forty Eight Insulations Inc*., 157 F.3d 169, 172 (2d Cir. 1998) (retroactive annulment of the stay validates actions taken in contravention of such stay, whereas termination, modification, and conditioning generally take effect only as of the date such relief is granted). Thus, the Code accounts for the fact that it may be inappropriate in certain circumstances to permit a debtor to take advantage of the automatic stay. *DelConte v. Torrez (In re DelConte)*, BAP No. 06-1302-SDK, 2007 WL 7535060, at *4 (9th Cir. BAP Aug. 14, 2007) (*citing Sherman v. SEC (In re Sherman)*, 441 F.3d 794, 815 (9th Cir. 2006)), opinion amended and superseded, 491 F.3d 948 (9th Cir. 2007).
>
> In deciding whether "cause" exists to annul the stay under § 362(d)(1), the bankruptcy court is required to examine the circumstances of the particular case and balance the equities of the creditor's position in comparison to that of the debtor's. *Souang v. Fularon (In re Fularon),* BAP No. 10-1428-JuHPa, 2011 WL 4485202, at *3 (9th Cir. BAP July 11, 2011) (*citing In re Nat'l Envtl. Waste Corp.,* 129 F.3d [1052 9th Cir. 1997] at 1055). Under this approach, the bankruptcy court considers "(1) whether the creditor was aware of the bankruptcy petition; and (2) whether the debtor engaged in unreasonable or inequitable conduct, or prejudice would result to the creditor." *In re Nat'l Envtl. Waste Corp*.,129 F.3d at 1055.

*In re Aki Oya*, No. BAP SC-19-1095-BKUL, 2019 WL 5390007, at *3–4 (B.A.P. 9th Cir. Oct. 18, 2019).

## IV. ARGUMENT

### A. The primary purpose of the bankruptcy filing was to interfere with the state court's order of sanctions, not any valid bankruptcy purpose. That constitutes bad faith.

The timing is telling. Mere hours after the state court sanctioned the Debtor, ordering the granting of a default in the divorce, the Debtor filed for bankruptcy using a skeletal filing.

The Debtor testified in her 341 that state court decision was the precipitating event. And, she claims she was not contemplating bankruptcy before that decision.

The cause was not financial pressure. The Debtor was facing no collection activity. Most of her debts were with family & friends or her divorce attorneys. She had lost nothing to collection actions.

That is further reinforced by the simple fact that she is not using the bankruptcy to hold onto anything. Not the family home nor even the car she claims is hers. And, her scheduled unsecured debts are less than the equity in the home. She was not insolvent.

The primary, if not the only, reason she filed bankruptcy was to block the state court from enforcing its order to sanction her. This was a two-party dispute that the Debtor dumped into bankruptcy court to delay the state court action. There is little doubt that the state court can resolve this outstanding issue, namely the enforcement of its order of sanction. *St. Paul Self Storage*, 185 B.R. at 583.

These reasons together amount to a compelling justification to find bad faith in the Debtor's filing of this bankruptcy. And such determination would be consistent with previous decisions in our district. *Bootjack Dairy M&D,* 654 B.R. at 386-87 and *Little,* 657 B.R. at 877-80.

Such a determination would send this case back to the state court to finalize its disciplining of the Debtor. And, that is justified on this record.

**B. In the alternative, abstention is appropriate.**

Given that the precipitating event for the bankruptcy was the state court's finding that the Debtor should be sanctioned, the Court has a strong reason to find that the Court should abstain and let the state court handle that issue.

The order challenged in the Amended Motion was a sanction. The state court ruling arisose from the Debtor's failure to comply with the specific requirements of the divorce proceeding, in particular a failure to cooperate with discovery. A state court, like all courts, has the inherent power to enforce its rulings. As such, the state court's determination to sanction the Debtor was part of the ordinary management of a domestic relations case. As such it falls within the type of matters Congress intended state courts to continue adjudicating, despite the filing of a federal case.

If the Court grants abstention, it should avoid further proceedings related to the enforcement of the state court order and allow the state court to proceed to resolve the domestic issues between the Debtor and Mr. Riekena.

**C. In the further alternative, retroactive annulment of the automatic stay is a viable option.**

If the Court determines that the automatic stay technically applied to any of the state court's post-filing actions, Respondents respectfully request retroactive annulment of the stay under 11 U.S.C. § 362(d). Bankruptcy courts possess broad authority to grant retroactive relief from the stay where equitable considerations warrant such relief. *Schwartz v. United States (In re Schwartz)*, 954 F.2d 569, 573 (9th Cir. 1992).

Retroactive annulment is available even where the party seeking relief had knowledge of the bankruptcy filing at the time of the challenged conduct. The Ninth Circuit BAP has expressly

held that "there is no per se rule that notice of the bankruptcy case precludes retroactive relief from stay." *In re Aki Oya*, 2019 WL 5390007, at *6 (9th Cir. BAP Oct. 18, 2019) (reversing bankruptcy court that had denied retroactive stay relief based solely on the creditor's notice of the bankruptcy filing). Rather, "[t]he creditor's knowledge is just one factor to consider in weighing the equities of the case." *Id.* The BAP affirmed retroactive annulment even where the creditor had knowledge of the debtor's bankruptcy filing prior to acting, because the debtor's inequitable conduct—filing a bare-bones bankruptcy as part of a bad-faith scheme to hinder and delay—significantly outweighed any knowledge-based factor. *Id.* at *7–8.

The equities here strongly favor retroactive annulment. The Debtor filed a skeletal bankruptcy petition within hours of the state court's oral sanctions ruling, not for any legitimate financial purpose, but as a litigation tactic to block enforcement of that ruling. The state court had already announced its decision from the bench before the petition was filed. No property was seized, transferred, or harmed. The Debtor was not insolvent. Her unsecured debts were less than the equity in the family home, and she filed no exemptions and intends to surrender the home. Under these circumstances, if the Court concludes that the stay technically applied to any portion of the post-filing state court activity, retroactive annulment is warranted to clarify that the Respondents' actions did not violate the stay and to restore the status quo in the state court proceedings.

## V. CONCLUSION

Debtor's Chapter 7 filing amounts to a bad faith filing, primarily designed to block a state court's order of sanction. That is inappropriate use of the bankruptcy process, justifying dismissal.

In the alternative, the Court can abstain and allow the state court to move forward to enforce its determination that the Debtor should be sanctioned.

Finally, another option is to retroactively annul the automatic stay, allowing the state court to take all action necessary to enforce its order.

Any of these approaches is appropriate and fully within this Court's discretion.

DATED: April 21, 2026

OLSEN TAGGART PLLC

*/s/ Steven L. Taggart*
STEVEN L. TAGGART
*Counsel for Bolton Law, PLLC*

TEC LAW, PLLC

*/s/ Tecla Druffel*
TECLA DRUFFEL
*Counsel for Kourtney Jones*

JEFF ANDREWS, P.C.

*/s/ Jeff Andrews*
JEFF ANDREWS
*Counsel for Zachary Tannar Riekena*

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of April, 2026, I electronically filed the attached document with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent by electronic transmission to all registered participants in this case through the Court's CM/ECF system, including the following:

Christopher S. Williams
Attorney for Debtor
Service@KootenaiBankruptcy.com

United States Trustee
ustp.region18.bs.ecf@usdoj.gov

Timothy R. Kurtz
Chapter 7 Trustee
trk@kurtztrustee.com

Safa Michael Riadh
safa@lawyercda.com

James Justin May on behalf of Trustee Timothy R. Kurtz
jjm@johnsonmaylaw.com

Jeffrey H Andrews on behalf of Non-Filing Spouse Anthony Tannar Riekena
jeffandrewslaw@yahoo.com

Tecla Elizabeth Druffel on behalf of Creditor Kourtney Jones
tecla@tec-law.net

And as otherwise provided in the CM/ECF system.

DATED: April 21, 2026

*/s/ Reena Lyon*
Reena Lyon
Legal Assistant