Christopher Williams, ISB No. 9827
**KOOTENAI BANKRUPTCY**
8475 N Government Way, #101
Hayden, Idaho 83835
Ph: 208.719-0232
Chris@KootenaiBankruptcy.com

Attorney for Debtor

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF IDAHO**

| | |
|---|---|
| In re:<br><br>AMANDA RIEKENA<br><br>Debtor. | Case No. 26-20041-BRW<br><br>Chapter 7<br><br>MEMORANDUM IN SUPPORT OF AMENDED MOTION TO ENFORCE THE AUTOMATIC STAY AND FOR SANCTIONS |

COMES NOW, Debtor AMANDA RIEKENA (hereinafter "Debtor"), by and through their counsel Christopher S. Williams of Kootenai Bankruptcy enters this Memorandum in Support of Amended Motion to Enforce the Automatic Stay and for Sanctions. This Memorandum acts as supplemental briefing to the legal arguments presented in the Amended Motion to Enforce the Automatic Stay and for Sanctions [Doc. No. 36] against Respondents, Zachary Tanner Riekena, Kourtney Jones, and Bolton Law, PLLC, (hereinafter "Respondents").

## I. A Judge Signing an Order is a Judicial Act, not a Ministerial Act, Precluding the *Pettit* Exception

The Ninth Circuit recognizes a narrow ministerial-act exception to the automatic stay. *See McCarthy, Johnson & Miller v. North Bay Plumbing, Inc. (In re Pettit)*, 217 F.3d 1072 (9th Cir. 2000). In describing the ministerial exception, the Court held "Ministerial acts or automatic occurrences that entail no deliberation, discretion, or judicial involvement do not constitute continuations of such

proceeding" for purposes of the continuation of a proceeding under 11 U.S.C. § 362, and thus such ministerial acts do not violate the automatic stay. *Id.* at 1080.

In that case, the Court held that "the judicial proceeding . . . ended once Judge Illston signed the order to release the funds. The clerk of the court had no discretion as to whether to issue the check to the Trust fund and her act was, therefore, purely ministerial. As such, because the judicial act concluded when Judge Illston signed the order, which occurred hours before the bankruptcy filings, the registry fund never became property of the bankruptcy estate and the [Appellees] did not violate the automatic stay." *Id.* at 1081. In coming to that conclusion, the Court differentiated between a Judicial Act, which entails "deliberation, discretion, or judicial involvement," and a ministerial act, which does not. *Id.* at 1080.

In this case, the Order for Sanctions signed by Magistrate Judge Walsh serves as an example of the difference. Judge Walsh's signature made on February 3, 2026 at 2:23:13 PM was a judicial act as it required deliberation, discretion, and judicial involvement of the Judge. Signing the order required Judge Walsh to review the party's proposed order, deliberate on its contents, consider their prior oral decision, and effect as much upon the order via its signature. Contrast Judge Walsh's signature with the Court Clerk's stamp on the top right of that same Order for Sanctions. It indicates that the Clerk of the Court entered the Order into their system on February 12, 2026 at 6:04:43.

The Clerk of the Court entering the Order for Sanctions on February 12, 2026 serves as an example of a ministerial act like that of the clerk of the court in *Pettit* releasing the funds because neither required judicial deliberation. Whereas Judge Walsh's signature on the Order for Sanctions is a judicial act that required judicial deliberation. Respondents admit that Judge Walsh's signing of the Proposed Partial Decree of Divorce required further judicial deliberation in their Respondent's Objection when they state "[o]n February 4, 2026, Magistrate Walsh held a hearing where she indicated she had entered the Order of default as a sanction but had questions on the property division component

she had granted on February 2, 2026." [Doc. No. 42 at 4]. When Respondents requested Judge Walsh sign the three proposed orders at question in this case, Respondents were requesting the Judge to take a judicial act, not a ministerial act, on each of those three orders. If Judge Walsh's review and signature of the three proposed orders would have been Judicial acts, then that act falls outside of the *Pettit* exception and the Respondents' attempts to have those orders signed are violations of the stay.

## II. Oral Orders of Default and Judgments are not Effective until Signed

Respondents argue that an oral ruling is operative when pronounced under *Katseanes v. Katseanes*, and thus the Proposed Order for Sanctions, the Proposed Order for Default, and the Proposed Partial Decree of Divorce were already operative prior to the Respondents' submission of those three proposed orders. 171 Idaho 478, 522 P.3d 1236 (2023). In *Katseanes*, the parties, Jeff Katseanes and Judy Katseanes were in contentious proceedings regarding Jeff's 401(k) plan. *Id.* The court in that case entered an oral order assigning the entirety of the 401(k) plan to Judy. *Id.* The Judge requested a proposed order from Judy and her counsel. Before the proposed order was signed, Jeff and his counsel had withdrawn the funds from the 401(k) account. *Id.* The Court held the oral order made by the judge was effective on the date that oral order was made, and the date on which the Judge signed the order was not material. *Id.* The District Court then held that Jeff had violated the Court's order by withdrawing the funds after the oral order had been entered and thus held Jeff in contempt for violating that oral order. *Id.*

In affirming the District Court's decision, the Supreme Court of Idaho differentiated between an oral interlocutory order and a final judgment.

> Jeff posits there must be a signed, written order entered by the court for a judgment to be valid. Though Jeff's position may be correct concerning the requirement that a final judgment be signed and filed in order to calculate the deadline to file an appeal, that does not answer the question before us. This case is not about a final judgment; it concerns an interlocutory oral order made in open court on January 6. Although this is a clear point of law that should require no further explanation, we now affirmatively hold that oral orders are entitled to the same force and effect between the parties to the lawsuit as an order reduced to writing.

*Id.* at *7.

Idaho rule of Family Law Procedure 802 defines "Judgment" as "a separate document entitled "Judgment" or "Decree."

In this case, there are three proposed orders and one order that are in question: 1) The Proposed Order Granting Sanctions, 2) The Proposed Order Granting Default, 3) The Partial Judgment & Decree of Divorce, 4) and the Order Granting Sanctions signed by Judge Walsh.

**A. The Entry of Default**

Entry of default is procedurally distinct from an oral interlocutory order, and requires formal written entry pursuant to Idaho law. Idaho Rule of Civil Procedure 55 governs entry of default in general civil actions., and states that when a party fails to plead or otherwise defend an action, "the court must order entry of the party's default," language that is identical to those regarding the rules for default under Idaho Rule of Family Law Procedure 301(a). The Idaho State Supreme Court has stated that "a court's oral statement that [a party] was defaulted was not a recognizable order for entry of default under Rule 55(a)(1)." *Pierce v. McMullen*, 156 Idaho 465, 469 (2014). The Court explained that entry of default requires "the filing of a document" reflecting the party is in default. *Id.* The Court analogized entry of default to entry of judgment under Rule 58(a), which occurs upon filing by the judge or clerk—not upon oral announcement. *Id.*

The Idaho Court of Appeals reaffirmed this principle in *In re Do Children*, holding that "the entry of default and the entry of a default judgment require more than a court's oral statement that default is being entered against a party." 159 Idaho 386, 390 (Ct. App. 2015). These holdings establish that a recognizable order for default requires compliance with the procedural rules governing written filing.

Although this matter arises under the Idaho Rules of Family Law Procedure, the operative language is materially identical. Idaho Rule of Family Law Procedure 301 requires the court to "order

entry of the party's default," mirroring Rule 55(a). Rule 302 similarly prescribes written applications, certifications, and documentation before default judgment may be entered. Nothing in the Family Law Rules eliminates the written-entry requirement recognized in *Pierce* and *In re Doe Children*.

Here, Judge Walsh orally declared default as a remedy under the Motion for Sanctions prior to the institution of the automatic stay. Under *Pierce* and *In re Doe Children*, however, that oral statement constituted neither an order for default nor entry of default. Entry required the entry of a written order reflecting the default. Until such filing occurred, default had not been either ordered or entered under Idaho law. Default is not self-executing. It is a rule-governed process requiring formal entry. The February 2, 2026 oral order granting sanctions and thus granting default was not effective until signed, and thus it was not effective at the time Debtor filed her bankruptcy case. Any attempts to have that default order signed after the petition was filed is a violation of the automatic stay.

**B. The Decree of Divorce**

A Decree of Divorce is a judgment under Idaho Rule of Family Law Procedure 802(a)(1), which defines Judgment as a "separate document entitled 'judgment' or 'decree." The proposed order submitted by Opposing Parties in this case is titled "Partial Judgment & Decree of Divorce." Judge Walsh never orally entered a Decree of Divorce. They orally granted the "motion for sanctions, [and] would enter default" Transcript of Proceedings, Case No. CV28-24-8457, Pg. 24, ll. 6–7.

Idaho Rule of Family Law Procedure 802(a)(1) requires that every judgment "must be set forth on a separate document, and that "[t]he filing of a judgment by the court . . . constitutes the entry of the judgment, and the judgment is not effective before such entry."

In this case, the Partial Decree of a Divorce is a Judgment that is not effective until it is entered, and an oral order cannot make it so. Because that Partial Decree of Divorce was not entered prior to Debtor's filing, any attempt to have that Order entered is an attempt to control property or assess pre-petition debts against Debtor, and is thus a violation of the automatic stay.

### C. The Order for Sanctions

Even if the oral order for sanctions was an oral interlocutory order pursuant to *Katseanes*, submitting the order for signature was a continuation of the proceeding in violation of the automatic stay. In *Katseanes*, the withdrawal of the retirement funds was a violation of the order because the order was effective when it was made. 171 Idaho at 478. Even if the Order for Sanctions was effective when it was made, submitting the Proposed Order for Sanctions, which purported to control property of the estate and assess a pre-petition debts against Debtor, violated the stay as it was a continuation of the proceeding under 11 U.S.C. § 362.

The Proposed Order for Sanctions requests default is entered against Debtor "as it relates to the property and debt division." As stated above, a grant of default is an order that requires a written order, and is not effective upon oral entry. Thus, the proposed order for sanctions that requests default, specifically regarding assets of the estate and enforcement of pre-petition debt against debtor, was not effective at the time of the oral order, and submission of the Proposed Order for Sanctions thus violated the automatic stay for both 1) assessing a prepetition debt against Debtor, and 2) attempting to control property of the estate.

In this case, *Katseanes* does not apply to the three orders at issue because Idaho Law states an Order for Default and a Partial Decree of Divorce are judgments only effective upon a written order. Even if the Oral Order for Sanctions were an effective order at the time of its oral pronouncement, the attempt to have that order signed is a continuation of the proceeding that purports to divide estate property and assess pre-petition debts against Debtor in violation of the stay.

## III. Emotional Distress Damages are Recoverable under *In re Dawson*

Damages for emotional distress are allowed as actual damages. *See In re Dawson*, 390 F.3d 1139 (9th Cir. 2004). To establish damages for "emotional distress under 362(h)[1], an individual must

---

[1] The section regarding damages was in 11 U.S.C. § 362(h) when *Dawson* was decided in 2004, and has since been

(1) suffer significant harm, (2) clearly establish the significant harm, and (3) demonstrate a causal connection between that significant harm and the violation of the automatic stay." *Id.* at 1149. The Court in *Dawson* held that "The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy." *Id.* at 1147. When indicating how emotional damages can be proven, the Court held that "[i]n some cases significant emotional distress may be readily apparent even without corroborative evidence . . . Or, even if the violation of the automatic stay was not egregious, the circumstances may make it obvious that a reasonable person would suffer significant emotional harm. *Id.* at 1150 citing *Wagner v. Ivory (In re Wagner)*, 74 B.R. 898, 905 (Bankr. E.D. Pa. 1987) and *United States v. Flynn (In re Flynn)*, 185 B.R. 89 (S.D. Ga. 1995).

In this case Debtor was robbed of her ability to seek the relief the bankruptcy code promises. Within two days of filing, Respondents rushed orders in front of Judge Walsh that attempted to seize assets and assess pre-petition debts against her, including attorney's fees to be paid to Mr. Riekena under the Proposed Order for Sanctions, which was eventually signed, and several debts under the Proposed Partial Decree of Divorce. With no income outside of support from family, and her financial circumstances being relevant to future custody of her children, Respondents' aggressive attempts to assess these debts and seize marital property placed significant financial pressure on Debtor in the time when she sought relief.

Respondents' conduct resulted in Debtor experiencing sleeplessness and significant anxiety heightened above her experience prior to the stay violations. *Dawson* states corroborative evidence is not necessary when a violator engages in egregious conduct or when the circumstances may make it

moved to 362(k).

obvious that a reasonable person would suffer significant emotional harm. *Id.* at 1150. In this case, Respondents' midnight filings and arguments in Court on February 4, 2026, all in the context of Jill Bolton's September 2025 voicemail, constituted egregious conduct under this standard, or are circumstances such that make it obvious that a reasonable person would suffer significant emotional harm.

## IV. Punitive Damages are Warranted due to a Pattern of Egregious Misconduct

Respondents downplay their willful violations of the automatic stay as "routine litigation conduct." The record demonstrates a concerted, bad-faith effort to subvert federal bankruptcy law. Punitive damages may be assessed for willful violations of the stay "in appropriate circumstances." 11 USC § 362(k). In this case, the circumstances are appropriate to award significant punitive damages.

Kourtney Jones and Bolton Law, PLLC received notice of Debtor's bankruptcy case at 5:29 PM PST on February 2, 2026, and thus had notice of the bankruptcy case at that time. [Exhibit 101 & 102]. Instead of pausing their efforts to assess to what degree debtor's bankruptcy case may have an effect on the proceedings in the divorce case, Kourtney Jones and Bolton Law, PLLC, on behalf of Zachary Riekena, made several late-night filings in state court. Respondents filed the Proposed Entry of Default Judgment [Exhibit 103], the Proposed Partial Judgment and Decree of Divorce [Exhibit 105], and the Proposed Order for Sanctions [Exhibit 111] at 12:23 AM PST just after midnight on the night of Debtor's filing.

These were followed the next day by an email on February 3, 2026 at 10:42 AM from Kourtney Jones to Wanda Butler, the clerk for Judge Walsh, which states "I wanted to key you into the proposed orders that were filed last night . . . . These were filed quickly due to notification of Petitioner's intent to file bankruptcy; I realize this morning that there was a formal notice herein at approximately 5:30 p.m. last night. However, in light of the Court's Oral ruling that predates the notice of bankruptcy, it is our hope that the Court will review the files for signature today." In that email, Ms. Jones recognizes

that a bankruptcy case was filed, that she filed the proposed orders "quickly" as a result of that bankruptcy filing, and in spite of Debtor's bankruptcy filing she requests the orders be signed. [Exhibit 107].

In response to that email Safa Riadh, Debtor's attorney in the divorce case, voiced his objection to Ms. Jones that proceeding with default would violate the bankruptcy stay [Exhibit 108]. Mr. Riadh then sent another email to Ms. Jones arguing vehemently that the allocation of estate property would violate the automatic stay. [Exhibit 109]. Mr. Riadh argued that continuation of the proceedings regarding debts and assets would violate the stay at the February 4, 2026 hearing. [Exhibit 114]. Mr. Riadh also spoke with Kourtney Jones via phone to express his objections to the continued requests for those orders to be signed.

Bolton Law, PLLC has a pattern of behavior of making arguments that violate bankruptcy law or ignore it altogether. Prior to the February 2, 2026 hearing, Ms. Riekena received a voicemail from Jill Bolton, an owner and attorney at Bolton Law, PLLC, stating that they would pursue a contempt action against Ms. Riekena if she were to file a bankruptcy case, and threatened jail time and fines against her if she were to do so. [Exhibit 113]. Ninth Circuit precedent clearly states that a state entity cannot punish a debtor for filing bankruptcy under federal law. *See Gonzales v. Parks*, 830 F.2d 1033 (9th Cir. 1987) ("State courts are not authorized to determine whether a person's claim for relief under a federal law, in a federal court, and within that court's exclusive jurisdiction, is an appropriate one. Such an exercise of authority would be inconsistent with and subvert the exclusive jurisdiction of the federal courts by allowing state courts to create their own standards as to when persons may properly seek relief in cases Congress has specifically precluded those courts from adjudicating."). By threatening Debtor with jail time for exercising her rights to file bankruptcy under federal law, and by arguing in state court they would seek fees against Debtor for delay of the divorce, Bolton Law, PLLC and Kourtney Jones inappropriately attempted to coerce and intimidate Debtor out of seeking relief she

is entitled to under federal law.

Respondents have habitually and flagrantly ignored the plain language of the bankruptcy code. They did this despite the multiple warnings by Mr. Riadh. Even if they believed in good faith that their actions would not have violated the automatic stay, the correct response to the notification of a bankruptcy filing is not to rush to file several late-night proposed orders. As of the date of this motion, there is no evidence that Respondents have formally withdrawn their proposed orders from consideration in state court. [Exhibit 115]. Kourtney Jones and Bolton Law, PLLC's actions are particularly egregious as they are attorneys and should be held to a higher standard than a non-attorney. It is the responsibility of Bolton Law, PLLC to have institutional guard rails in place to prevent one of its attorneys from violating the stay or grossly mischaracterizing federal law to pro se parties.

Zachary Riekena's acts similarly warrant a punitive damage award against him. As his attorney, all of the acts Kourtney Jones and Bolton Law, PLLC have taken that violated the stay were taken at his direction and behest. Mr. Riekena was present at the February 4, 2026 hearing where he heard Mr. Riadh's arguments regarding the automatic stay. At any point, he could have instructed his attorney to act less aggressively and deliberate as to whether Mr. Riadh's arguments regarding the stay had merit.

## V. Retroactive Annulment of the Stay

Retroactive annulment is an extremely rare remedy governed by the *Fjeldsted* factors, which requires the Court "to balance the equities in order to determine whether retroactive annulment is justified." *In re Fjeldsted*, 293 B.R. 12 (9th Cir. BAP 2003). The Court listed a non-exclusive list of twelve factors the court should consider when deciding whether retroactive annulment is appropriate. *Id*. at 26.

Balancing the equities heavily favors Debtor. This is Debtor's only bankruptcy case she has filed. Respondents had actual, written notice of bankruptcy before they filed their proposed orders. Because of the egregious nature of their violations, retroactive annulment of the stay is not appropriate.

Only equitable considerations would warrant retroactive relief from the stay, and none are present in this case.

If Respondents had acted with restraint and withdrawn their proposed orders after Mr. Riadh had given them fair warning that submission of those proposed orders violated the stay or if they had even requested Judge Walsh hold off on signing those orders until they could consider Mr. Riadh's arguments during the February 4, 2026 hearing, they may have a colorable argument for a technical, good-faith error. Instead, their persistence compounds the egregiousness of their conduct. As of the date of this filing, it does not appear that the Proposed Order Granting Default or the Proposed Partial Decree of Divorce have been affirmatively withdrawn in the state court proceedings. [Exhibit 115]. They were successful in having their Motion for Sanctions entered. Equitable relief annulling the stay retroactively is unavailable to parties who knowingly and willfully flout the bankruptcy code.

## VI. Domestic Relations Exception to the Automatic Stay

Section 362(b)(2) of the bankruptcy code provides exceptions to the automatic stay, including specific exceptions that generally regard custody, child support, and the division of property in a divorce proceeding. Respondents argue those provisions generally reflect a broad congressional "intent that bankruptcy courts should avoid unnecessary interference with state domestic relation proceedings." [Doc. No. 42 at 6]. The statute's specificity as to the acts that do not violate the stay rebuts that argument. If the intent of the legislature was to broadly exempt domestic relations proceedings from the automatic stay, they would have made that clear. Instead, Congress detailed specific instances that are not covered by the stay, and Respondents do not allege their conduct falls within any of those specific exceptions.

## VII. The Automatic Stay's Exemption for Contempt Actions taken by a Court Targeting Litigation Misconduct are Limited

Respondents argue that the motion for sanctions is not a violation of the stay under the holding of *Yellow Express, LLC v. Dingley (In re Dingley)*, 514 B.R. 591 (9th Cir. BAP 2014). The Panel's

reasoning in that case was overruled, and otherwise affirmed on different grounds by the Ninth Circuit in *Yellow Express, LLC v. Dingley (In re Dingley)*, 852 F.3d 1143 (9th Cir. 2017). While the Ninth Circuit affirmed the Panel's ruling, it overruled the Panel's reasoning that the actions in that case were not violations of the stay under the precedent of *David v. Hooker, Ltd.*, 560 F.2d 412 (9th Cir, 1977), in which the Ninth Circuit had interpreted the provisions of the pre-modern bankruptcy code to hold that civil contempt proceedings were not automatically stayed. The Ninth Circuit instead held that the exemption of state court contempt or sanctions proceedings in that case fell within the limited, textual bounds of 11 U.S.C. § 362 (b)(4), governing the policing authorities of governing agencies. *Dingley*, 852 F.3d at 1146.

11 U.S.C. § 362(b)(4) states the automatic stay does not apply to "the commencement or continuation of an action or proceeding by a governmental unit … to enforce such governmental unit's … police and regulatory power." The Ninth Circuit uses two tests to determine whether a governmental action falls under that governmental regulatory exemption: "the pecuniary purpose test and the public policy test." *Id.* "If the court determines that the government's action is intended either to protect the government's pecuniary interest in the debtor's property or to adjudicate private rights, the government regulatory exemption will not apply and the automatic stay will be imposed." *Id.* at 1147 quoting *Universal Life Church, Inc.*, 128 F.3d 1294, 1297 (9th Cir. 1997).

In this case, the Proposed Order for Sanctions seeks a default against Debtor, which would take control of Debtor's property, and thus estate property. The proposed order attempts to adjudicate private rights of the debtor. Because the Proposed Order for Sanctions seeks a default that targets Debtor's private interest in property, Respondents' conduct in submitting the Proposed Order for Sanctions does not fall within the governmental regulatory exemption under 11 U.S.C. § 362(b)(4). Similarly, the Proposed Order for Default and the Proposed Partial Judgment and Decree of Divorce pertain to the Debtor's private interest in property.

**VIII. Attorney's Fees**

Debtor is statutorily entitled to recover all attorney's fees incurred not only in ending the stay violation in state court, but also in prosecuting this motion for damages in the bankruptcy court. *In re Schwartz-Tallard v. Schwartz-Tallard*, 803 F.3d 1095 (9th Cir., BAP 2015). Respondents' willful and persistent violations necessitated this Motion, and they should bear the cost. Debtor's attorney's fees pursuing this motion are still accumulating and will continue to accumulate after the hearing on the Amended Motion for Sanctions, and if Debtor prevails, Debtor will submit an itemization of those fees to this Court along with the itemization of the fees accrued by Debtor's family law counsel, Safa Riadh, as a result of these stay violations.

For the reasons set forth above, and as further detailed in the Amended Motion, Respondents' post-petition actions were not ministerial acts or in the pursuit of ministerial acts, did not fall within any recognized exception to the automatic stay, and constituted willful violations of 11 U.S.C. § 362. Accordingly, Debtor respectfully requests that the Court deny Respondents' Objection in its entirety, grant the Amended Motion, and award actual damages, punitive damages, and attorney's fees, and award further relief as the Court so deems appropriate.

DATED: May 5, 2026

KOOTENAI BANKRUPTCY

/s/ Christopher Williams
Christopher Williams, Attorney for Debtor

**CERTIFICATE OF SERVICE**

I CERTIFY that on May 5, 2026, I filed the MEMORANDUM IN SUPPORT OF AMENDED MOTION TO ENFORCE THE AUTOMATIC STAY AND FOR SANCTIONS causing the following CM/ECF registered participants to be served by electronic means, as more fully reflected on the Notice of Electronic Filing

| | |
|---|---|
| US Trustee | ustp.region18.bs.ecf@usdoj.gov |
| Chapter 7 Trustee, Tim Kurtz | trk@kurtztrustee.com |
| Safa Michael Riadh | safa@lawyercda.com |
| James Justin May on behalf of Trustee Timothy R. Kurtz | jjm@johnsonmaylaw.com |
| Jeffrey H. Andrews on behalf of non-filing spouse Zachary Tannar Riekena | jeffandrewslaw@yahoo.com |
| Tecla Elizabeth Druffel on behalf of Kourtney Jones | tecla@tec-law.net |
| Steven L. Taggert on behalf of Bolton Law, PLLC | staggart@olsentaggart.com |

DATED: May 5, 2026

KOOTENAI BANKRUPTCY

/s/ Christopher Williams________________
Christopher Williams, Attorney for Debtor