Christopher Williams, ISB No. 9827
**KOOTENAI BANKRUPTCY**
8475 N Government Way, #101
Hayden, Idaho 83835
Ph: 208.719-0232
Chris@KootenaiBankruptcy.com

Attorney for Debtor

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF IDAHO**

| | |
|---|---|
| In re: | Case No. 26-20041-BRW |
| AMANDA RIEKENA | Chapter 7 |
| Debtor. | CLOSING ARGUMENTS |

COMES NOW, Debtor AMANDA RIEKENA (hereinafter "Debtor"), by and through her counsel Christopher S. Williams of Kootenai Bankruptcy enters these written closing arguments related to the May 12 and 13, 2026 hearings on Debtor's Amended Motion to Enforce the Automatic Stay and for Sanctions [Doc. No. 37], and Respondent's Motion to Dismiss, Abstain or Retroactively Annul the Automatic Stay [Doc. No. 55].

## Debtor's Motion to Enforce the Automatic Stay and for Sanctions

### I. The Stay Violations

Kourtney Jones, Bolton Law, PLLC, and Zachary Tannar Riekena willfully violated the automatic stay under 11 U.S.C. § 362 on no less than six occasions between February 2, 2026 and February 4, 2026.

For a stay violation under 11 U.S.C. § 362[1] to be willful requires only knowledge of the bankruptcy and an intentional act. Willfulness does not require that the entity violating the stay has the intent to violate the stay, only that they took the action that violated the stay while they had knowledge that a bankruptcy case had been filed.

Ms. Jones testified, and as corroborated by Exhibits 104, 106, and 111, that she submitted the Proposed Order for Entry of Default Judgment [Exhibit 104], the Proposed Partial Judgment and Decree of Divorce [Exhibit 106], and the Proposed Order for Sanctions [Exhibit 110], all on the morning of February 3, 2026 at 12:23 AM PST, the night after Ms. Riekena had filed her bankruptcy petition on February 2, 2026. [Exhibit 203].

**A. The Proposed Order for Entry of Default Judgment**

The Proposed Order for Entry of Default Judgment [Exhibit 104] states that "default is entered against Petitioner, Amanda M. Riekena, as it relates to the property and debt division in the above-entitled case. . . ." The purpose of this default judgment is to further the entry of the Partial Judgment which would seek to divide up assets that had become property of the bankruptcy estate, a violation of § 362(a)(1)'s prohibition against the continuance of a proceeding against Debtor and § 362(a)(3)'s prohibitions against exercising control over property of the estate, and assess debts against Debtor, a violation of § 362(a)(6)'s prohibition against any act to assess a claim against the debtor. Ms. Jones action in submitting the Proposed Order for Entry of Default Judgment after Ms. Riekena had filed her bankruptcy case is thus, undeniably, a violation of the stay.

**B. The Proposed Partial Judgment and Decree of Divorce**

The Partial Judgment and Decree of Divorce [Exhibit 106] includes several provisions regarding division of assets and debts in violation of the stay.

---

[1] References to any code section will be to Title 11, the Bankruptcy Code, unless stated otherwise.

Page 1, Section II states "The parties' separate personal and real property shall be reaffirmed to them as their sole and separate property free from any claim by the other party" in violation of § 362(a)(3)'s prohibition on exercising control over property of the estate.

Page 2, Section III A and B purports to divide personal property amongst the parties in violation of § 362(a)(3)'s prohibition on exercising control over property of the estate.

Pages 2–3, Sections IV (A), (B), (D), and (E) purport to divide real property amongst the parties in violation of § 362(a)(3).

Pages 3–4, Sections V (A), (B), (C), (D), and (E) and incorporating Page 12, purport to assess prepetition debts against Debtor in violation of § 362(a)(6).

Page 4, Section VI purports to require Debtor to continue making monthly minimum payments on pre-petition debt in violation of § 362(a)(6).

Page 5, Section VII purports to require the parties to take actions necessary to affect the personal property, real property, and debt division in violation of § 362(a)(1), (3), and (6).

Pages 5–7, Sections X(B), (C), and (D) purport to require the division of retirement accounts in violation of § 362(a)(1) and (3).

Ms. Jones' action in submitting the Proposed Partial Judgment and Decree of Divorce after Ms. Riekena had filed her bankruptcy case is thus a violation of the stay.

**C. The Proposed Order for Sanctions**

The Proposed Order for Sanctions [Exhibit 110] states ". . . default is entered against Petitioner, AMANDA M. RIEKENA, as it relates to the property and debt division." The purpose of default being entered in the proposed order is for purposes of having the Partial Judgment and Decree of Divorce [Exhibit 106] entered, which, as detailed previously, violates § 362(a)(1), (3), and (6). It states that "paragraphs XVIII, XIX, XX, XXI, XXII, XXIII, XXIV, XXV, XVI, and

XXVII [of] Respondent's Amended Answer and Counterclaim, filed February 3, 2026, are established." [Exhibit 106 at 2]. As established by the testimony of Safa Riadh, those Paragraphs related to property and debt division. The purposes of establishing those paragraphs is to have the Partial Judgment and Decree of Divorce [Exhibit 106] entered, which violates § 362(a)(1), (3), and (6). Finally, it states that "Respondent, ZACHARY T. RIEKENA, shall be awarded his attorney's fees and costs as it relates to the Motion for Sanctions . . . ." [Exhibit 110 at 2] in violation of § 362(a)(6). Ms. Jones' action in submitting the Proposed Order for Sanctions after Ms. Riekena had filed her bankruptcy case is thus a violation of the stay.

**D. The February 3 Request for Signatures**

On February 3, 2026, Ms. Jones sent an email to Wanda Butler, Magistrate Judge Walsh's clerk, stating "I wanted to key you into the proposed orders that were filed last night (envelope #9375090). These were filed quickly due to notification of Petitioner's intent to file bankruptcy; I realize this morning there was a formal notice filed herein at approximately 5:30 p.m. last night. However, in light of the Court's Oral ruling that predates the notice of bankruptcy, it is our hope that the Court will review the files for signature tonight." [Exhibit 107]. Per the testimony of Mr. Riadh and Ms. Jones, and consistent with the envelope number 9375090 listed in Exhibits 103, 105, and 111, the "proposed orders" Kourtney Jones refers to in that email are the Proposed Order for Entry of Default Judgment [Exhibit 104], the Proposed Partial Judgment and Decree of Divorce [Exhibit 106], and the Proposed Order for Sanctions [Exhibit 110]. Those three proposed orders each violate the automatic stay in several ways, and thus Ms. Jones requesting that Judge Walsh sign those proposed orders also violates § 362(a)(1), (3), and (6).

**E. The February 4 Request for Signatures**

After Ms. Riekena filed her bankruptcy case, and after those three proposed orders had been

submitted, Ms. Jones then unequivocally pursued the entry of those orders during the February 4, 2026 hearing stating "I don't know if you have seen the filings that were put in front of you for the judgment on default." [Exhibit 214 at 2.].

> The Court: I did. I signed – I signed the default. I just had questions about the community property, the home.
>
> Ms. Jones: Okay.
>
> The Court: I think I may need additional evidence and information in order to equitably divide that property. I think I might need more information on that.
>
> Ms. Jones: Okay.
>
> The Court: Why it should be – why it's equitable to divide the community property as proposed in the default judgment
>
> Ms. Jones: Okay, your Honor.
>
> The Court: And so just to put everybody on notice, that we might need to take a couple of minutes at the time of trial to address that.
>
> Ms. Jones: Okay. Great.
>
> The Court: Yeah. So I've signed the default.
>
> Ms. Jones: Okay.
>
> The court: and I've signed the order for sanctions. I've just not signed the default judgment pending further inquiry on that issue.
>
> Ms. Jones: Okay. Thank you, your honor.

[Exhibit 214 at 2–3]. During the February 4, 2026 hearing, Ms. Jones' communication to the court requesting Judge Walsh sign those "filings" was a direct reference to the three proposed orders. Although Respondents suggest "I don't know if you have seen the filings" is ambiguous in

isolation, it is clear within the context of the conversation that continued that Ms. Jones was actively soliciting Judge Walsh to sign those proposed orders. When Ms. Jones requested Judge Walsh sign those proposed orders that violated the stay she violated § 362(a)(1), (3), and (6).

F. **The February 4 Oral Threat**

During the February 4, 2026 hearing, Mr. Riadh brought up the matter of Ms. Riekena's bankruptcy and the automatic stay, explicitly stating that the Court cannot sign those orders, to which Ms. Jones stated "Yes, Your Honor. I just wanted to make a record that your oral record went into place prior to the filing or even the notice of filing; however, that is – I haven't seen the filings of the bankruptcy either yet. And however, if there is a delay, I am going to be lodging request for fees for additional delay due to the timing in the bad-faith filing of bankruptcy after the default went into place." [Exhibit 214 at 4–5]. By threatening fees within the ongoing, pre-petition state court divorce case, Ms. Jones threatened to continue the proceeding and assess attorney's fees against Debtor in violation of § 362(a)(1). The threat states she will assess attorney's fees against Debtor for invoking her federal right to bankruptcy protection, and is designed to be coercive and retaliatory in violation of § 362(a)(6).

## II. Willfulness

For a violation of the automatic stay to be "willful," the actor need not intend to violate the stay or even believe their actions violate the stay; they simply need to have actual knowledge the bankruptcy had been filed.

On February 2, 2026 at 4:13 PM PST, Ms. Riekena's bankruptcy petition was filed with the District of Idaho Bankruptcy Court [Exhibit 200].

On February 2, 2026 at 5:29 PM PST, a Notice of Bankruptcy was filed in Ms. Riekena's divorce case. [Exhibits 101 and 102]. The Notice of Bankruptcy clearly states ". . . "AMANDA

RIEKENA, filed for relief under Chapter 7 of the Bankruptcy Code on February 2, 2026, Case No. 26-20041 in the District of Idaho Bankruptcy Court." [Exhibit 101]. The Notice of Bankruptcy clearly lists her bankruptcy counsel's name, Idaho State Bar Number, and his contact information including his phone number, email address, and address. [Exhibit 101]. Per the testimony of Mr. Riadh and Ms. Jones, this notice would have been immediately served upon Ms. Jones' service inbox. Ms. Jones testified that she does not have access to her service inbox from home, and did not see this Notice of Bankruptcy Filing [Exhibit 101] on February 2, 2026.

On February 2, 2026 at 5:30 PM PST, Mr. Riadh called Ms. Jones to inform her that the Notice of Bankruptcy Filing had been filed in the Divorce Case. Mr. Riadh testified that the timing of this phone call was immediately after he received service of the Notice of Bankruptcy Filing via his service inbox at 5:29 PM PST. Mr. Riadh corroborated the timing of the phone call as 5:30 PM PST with a copy of his Verizon Business Phone bill entered as an exhibit. Mr. Riadh and Ms. Jones each testified that this phone call happened. Mr. Riadh testified that he clearly communicated the bankruptcy case had been filed and requested Ms. Jones review the Notice of Bankruptcy Filing. Ms. Jones testified that Mr. Riadh told her that Ms. Riekena merely "intended" to file bankruptcy. Mr. Riadh testified that he called Ms. Jones specifically because he wanted to avoid potentially having to testify at a Motion for Sanctions. Given the documented timing of the phone call, after Ms. Riekena's Notice of Bankruptcy Filing was filed with the Court, and Mr. Riadh's stated intention of wanting to avoid testifying at a potential sanctions hearing entirely, Mr. Riadh's testimony regarding that phone call is more credible, and thus Ms. Jones had actual knowledge of the bankruptcy filing on February 2, 2026 sometime between 5:30 PM PST and 6:00 PM PST.

On February 3, 2026 at approximately 10:30 AM PST, Ms. Jones testified she entered her law office at about this time and was first informed of the Notice of Bankruptcy Filing then by her paralegal. Ms. Jones indisputably had actual knowledge of the bankruptcy filing at this time. Mr.

Riekena testified that he was told about Ms. Riekena's bankruptcy filing on or about February 3, 2026.

On February 4, 2026 at approximately 3:00 PM PST, the Pre-trial conference hearing was held at which Mr. Riadh, Judge Walsh, Ms. Jones, Mr. Riekena, and Ms. Riekena are all present, and the bankruptcy case is discussed. [Exhibits 214 and 216 at 38]. There is no dispute that all parties present had knowledge of Debtor's case after that hearing.

Consistent with Mr. Riadh's testimony and his phone records, Kourtney Jones knew about the bankruptcy filing on February 3, 2026 at 12:23 AM PST when she filed the three proposed orders. Having knowledge of the bankruptcy case, her actions filing those proposed orders were willful violations of the automatic stay.

Even if Ms. Jones believed bankruptcy had not been filed, and that she was only informed by Mr. Riadh's February 2 phone call of Debtor's "intent" to file bankruptcy, after she learned of Debtor's filing the next morning when she came into the office, she then had the duty to correct her violations of the stay. Mr. Riadh testified that any family law attorney would know they can simply send an email to the Judge's clerk and withdraw a proposed order, and he even informed her of that option in his February 3, 2026 11:12 AM email stating "I am also asking that you email Ms. Butler back and withdraw your request" referring to Ms. Jones' submission of the three proposed orders. [Exhibit 109]. Ms. Jones' testimony that she did not believe she had the ability to email the clerk and withdraw a proposed order submitted by her is not credible. Ms. Jones' violations of the stay by submitting those three proposed orders then became willful violations after she refused to take action to correct the violations.

Mr. Riekena had actual knowledge of the bankruptcy filing on February 3, 2026 and testified he did not take any action to request Ms. Jones withdraw those proposed orders. Under

established Ninth Circuit precedent notice of a bankruptcy filing to a creditor's attorney or agent is legally imputed to the principal. *See In re Price*, 871 F.2d 97, 99 (9th Cir. 1989).

Bolton Law, PLLC had actual or imputed knowledge of the bankruptcy filing when Ms. Jones did, whether that is February 2, 2026 at 5:30 PM PST or February 3, 2026 at 10:30 AM PST, as Ms. Jones is an agent of Bolton Law, PLLC.

## III. Punitive Damages

Punitive damages are warranted against Bolton Law, PLLC and Ms. Jones. The violations of the stay that occurred in this case could have been avoided entirely if Bolton Law, PLLC had even a rudimentary policy regarding what actions an attorney should or should not take when a bankruptcy case is filed by a party to litigation they are involved in, or if Bolton Law, PLLC had given their attorneys any proper training regarding bankruptcy. They could have been avoided entirely if Ms. Jones had entertained Mr. Riadh's several warnings. [Exhibits 108, 109, 214 at 3–4]. They could have been avoided had Ms. Jones contacted Ms. Riekena's bankruptcy counsel utilizing the contact information on the Notice of Bankruptcy Filing if she had any misunderstanding about the effects of the bankruptcy stay. [Doc. No. 101]. Ms. Jones testified that she knew Ms. Riekena had been considering filing a bankruptcy petition throughout the entire pendency of the divorce case, and there is no reason why Ms. Jones or Bolton Law, PLLC could not have taken any steps in the year leading to Ms. Riekena's filing to research to what extent Ms. Riekena's bankruptcy filing could affect the divorce case if such bankruptcy filing had occurred.

Ms. Jones testified that she treated Mr. Riadh's warnings as a state court issue that they would brief to Judge Walsh and let the Judge decide on. This is despite Mr. Riadh's explicit warning, in the presence of Ms. Jones, to the Court that the automatic stay prevents the Court from taking any action, and Mr. Riadh's direction to Ms. Jones to withdraw the three proposed orders.

[Exhibit 109]. Ms. Jones also testified that she would look to Judge Walsh for direction on how to treat the automatic stay's applicability in the divorce case. Ms. Jones' reliance is misplaced. The automatic stay is self-executing under federal law; it is not Judge Walsh's responsibility to act as a safeguard to prevent Ms. Jones and Bolton Law, PLLC from violating the Bankruptcy Code.

Viewed in the context of Jill Bolton's September 11, 2025 voicemail in which she threatens Debtor with fees and jail time [Exhibit 113], the actions of Ms. Jones and Bolton Law, PLLC's went beyond zealous advocacy for their client, and were instead calculated, coercive, and willful violations of the federal bankruptcy law.

In civil proceedings, the unexcused failure of a party or key witness to testify regarding facts uniquely within their control permits the court to draw an adverse inference that their testimony would have been unfavorable. *Underwriters Laboratories Inc. v. National Labor Relations Board*, 147 F.3d 1048, 1054 (9th Cir. 1998) ("[W]hen a party fails to call a witness who may be reasonably assumed to be favorably disposed to the party, an adverse inference may be drawn regarding any factual question on which the witness is likely to have knowledge." *Quoting International Automated Machs., Inc.*, 285 NLRB 1122, 1123(1987) citing 2 Wigmore, Evidence § 286 (2d ed. 1940); McCormick, Evidence § 272 (3d ed. 1984)"). By choosing not to testify and remain absent rather than take the witness stand, Jill Bolton, owner of Bolton Law, PLLC, left the Debtor's testimony regarding the terror and distress caused by Bolton Law, PLLC completely uncontradicted.

For purposes of punitive damages under § 362(k), Ms. Bolton's absence demonstrates a complete lack of remorse, a refusal to take accountability for her firm's actions, and a continued disregard for the authority of the Bankruptcy Code. The stay violations that occurred in this case are not simple "routine procedural disputes," [Doc. No. 42 at 2] or "routine litigation conduct" [Doc. No. 42 at 11], and this Motion for Sanctions is not "unsupported by law or fact" [Doc. No.

33 at 8] or "meritless" [Doc. No. 33 at 8]. That Respondents would take those positions, and again threaten attorney's fees against Debtor in their pleadings [Doc. No. 33 at 8], further shows that a mere award of actual damages is insufficient to change the culture of a law firm that uses threats of jail time against opposing parties for considering exercising their right to file bankruptcy, rushes through midnight filings in violation of the stay, takes no actions to correct their violations of the stay, and fails to attend and testify at the resulting evidentiary hearing. Without her testimony, it's impossible to know how many potential debtors have been intimidated out of filing for bankruptcy by Bolton Law, PLLC or Jill Bolton's threats.

Debtor requests a total of $75,000 in punitive damages against Kourtney Jones and Bolton Law, PLLC for their actions that could have been avoided entirely with even a modicum of restraint.

While Ms. Jones testified that Bolton Law, PLLC now has a policy regarding bankruptcy filings, it is further appropriate to order them to file that policy with the bankruptcy court to determine its adequacy, and to require Ms. Jones and all owners of Bolton Law, PLLC to complete CLEs specific to bankruptcy law.

## IV. Actual Damages

Ms. Riekena testified to the emotional damage caused to her by these violations of the stay. She testified that since her bankruptcy filing, she is being told things can't happen, and then they keep happening, referring to Respondents' attempts to take post-petition action against her. Respondents' actions have exacerbated her stress from both her continuing fight with cancer and her mental health struggles. Debtor is having sleepless nights and has lost weight as a result of Respondents' stay violations. Respondents entered one of Ms. Riekena's Instagram posts in which she dances as an exhibit designed to rebut the very real emotional harm caused by Respondents'

conduct. That Instagram post carries nominal evidentiary weight. As Ms. Riekena credibly testified, a single social media post is not reflective of a person's internal struggles or daily reality. Debtor requests this Court enter an order of $10,000 against Respondents for Debtor's emotional damages.

Ms. Riekena must pay her counsel in the divorce case, Safa Riadh, for time he spent on her case that he would not otherwise have had to bill Debtor, but for Respondents' stay violations. Particularly, this includes the time he spent contacting Ms. Jones about the bankruptcy filing during the week of February 2, and the time he spent briefing the bankruptcy matter before the state court.

Ms. Riekena has had to hire her bankruptcy attorney, Christopher Williams, to represent her in this Amended Motion to Enforce the Automatic Stay and for Sanctions, and thus should be awarded reasonable attorney's fees and costs as actual damages. Ms. Riekena requests that this court enter an order against Respondents awarding actual damages, with the exact amount of attorney's fees and costs to be determined upon the filing of Fee Affidavits by Debtor's bankruptcy counsel, Christopher Williams, and Mr. Riadh within 14 days of the Court's order. The award of attorney's fees and costs should be limited to those related to Respondents' violations of the stay and Debtor's counsel's pursuit of the Amended Motion to Enforce the Automatic Stay and for Sanctions, including briefings and attendance at any hearings related to that matter.

## Respondents' Motion to Dismiss, Abstain or Retroactively Annul the Automatic Stay

### I. Motion to Dismiss

Respondents' Motion to Dismiss is premised on the argument that Debtor filed in bad faith and filed entirely for the purpose of dodging state court litigation. The facts do not support that proposition.

#### A. Debtor's Need to File for Bankruptcy Protection

Ms. Riekena credibly testified that prior to her bankruptcy filing she had been receiving collection letters from creditors, collection phone calls from creditors, and had lost phone service intermittently due to her inability to pay her cell phone service provider. The proposed Partial Judgment and Decree of Divorce prepared by Respondents for signature by Judge Walsh purports to assess debts owed by USAA of an unknown amount, a Barclays card of $2,387.21 and a reimbursement claim of $5,760.52 and $12,318.15, with a hold harmless clause against Ms. Riekena, and in favor of Zachary Riekena. [Exhibit 106 at 3, 12]. Debtor's schedules list the total debt owed to USAA Savings Bank on two accounts of $3,000 and $10,000. [Exhibit 203 at 24].

Respondents argue that Ms. Riekena has substantial debt owed to insiders or friends, which serves as a factor favoring dismissal for bad faith. Regardless of debt owed to insiders, Debtor owes substantial debt for credit card debt and attorney's fees. Bankruptcy law requires Debtor to list all creditors, and thus Debtor would not have been able to file without disclosing debts owed to those insiders.

Debtor's schedules list nonpriority unsecured claims totaling $160,040.97, not including debt that is unknown. [Exhibit 203 at 26]. Debtor testified her income was primarily support from friends or family members as of February 2, 2026. Debtor testified she cannot hold a job due to her cancer diagnosis and any hope for other income going forward is effectively limited to social security disability, which is speculative at this point.

Debtor needed a bankruptcy filing and needed one for a long time. She has too much debt and is unable to pay that debt.

**B. The Timing of Debtor's Bankruptcy Filing**

Respondents argue that Debtor's filing, occurring close in time to the oral order for sanctions entered on February 2, 2026, indicates an effort to defeat state court litigation, and proves

Debtor's bad faith in her filing. Respondents rely heavily on Chapter 11 case law in their motion, [Doc. No. 55 at 6] and fail to adequately prove Debtor's Consumer Chapter 7 bankruptcy case meets the standard for dismissal.

Ms. Riekena testified she needed a bankruptcy filing since at least since September of 2025 when she first broached the subject with Mr. Riekena. Ms. Riekena testified that Jill Bolton's September 11, 2025 voicemail intimidated her from filing her bankruptcy case, and that but for that voicemail, she would have filed much sooner. [Exhibit 113]. Respondents introduced text messages between Ms. Riekena and Mr. Riekena regarding potentially filing bankruptcy. That communication does not change the fact that Ms. Riekena was threatened and that threat successfully chilled her exercise of her federal right to file for bankruptcy protection in late 2025.

Ms. Riekena testified that leading up to the February 2, 2026 state court hearing, she believed that she would be able to reasonably resolve her debt after the divorce case had been finalized. Once it became clear in the divorce case that resolution of her debt would be impossible, and she would have tens of thousands of dollars of debt assessed against her in favor of Mr. Riekena, it became clear that bankruptcy was the only possible path to a fresh start.

The timing of Ms. Riekena's filing that Respondents characterize as indicative of efforts to defeat state court litigation and thus indicative of bad faith was the result of the actions of Jill Bolton and Bolton Law, PLLC threatening Debtor with jail for even considering bankruptcy filing.

## II. Abstention

Respondents fail to provide any evidence that this Court should abstain in any way. They cite *In re Tiel*, 2015 WL 2398555 (Bankr. D. Idaho 2015) for the proposition that federal courts should decline to involve themselves in disputes that are primarily domestic. [Doc. No. 55 at 6–7]. Respondents argue this Court should abstain from adjudicating the Motion for Sanctions, and yet

no party to this proceeding has requested this Court to adjudicate that matter. The Bankruptcy Code does not prevent the state court from adjudicating the Motion for Sanctions by Mr. Riekena and against Ms. Riekena, so long as the resulting order does not violate the automatic stay. Abstention in this case is entirely inapplicable and redundant.

## III. Retroactive Annulment of the Stay

Retroactive annulment of the stay is an extraordinary equitable remedy. A party seeking equitable relief must come to the court with clean hands. Respondents deliberately and willfully violated the automatic stay on no fewer than six occasions, flagrantly ignoring Mr. Riadh's efforts to explain that the Bankruptcy Code prohibits their attempts to divide property and assess pre-petition debts against Debtor. They are not entitled to equitable relief to retroactively cure their own willful violations of federal law.

## Conclusion

Debtor's bankruptcy filing was a good-faith exercise of her federal rights, necessitated by debilitating debt and without the income to pay that debt. Rather than respect the automatic stay, Respondents chose a path of intimidation, midnight filings, and willful blindness to the Bankruptcy Code.

For the foregoing reasons, Debtor respectfully requests this Court deny Respondents' Motion to Dismiss, Abstain, or Retroactively Annul the Automatic Stay [Doc. No. 55] in its entirety. Debtor further requests that this court grant the Debtor's Amended Motion to Enforce the Automatic Stay and for Sanctions [Doc. No. 37], and enter an order:

1. Awarding actual damages: Granting Debtor $10,000 against Respondents for emotional distress, plus reasonable attorney's fees and costs incurred as a result of the stay violations and incurred in pursuing the Amended Motion to enforce the Automatic Stay and for

Sanctions [Doc. No. 37], with the exact amount to be determined upon the filing of Fee Affidavits by Debtor's bankruptcy counsel, Christopher Williams, and by Safa Riadh within FOURTEEN (14) days of the Court's Order;

2. Awarding Punitive Damages: Granting Debtor $75,000 in punitive damages against Kourtney Jones and Bolton Law, PLLC, pursuant to 11 U.S.C. § 362(k), to deter other violations of the stay, and future coercive and retaliatory conduct against potential debtors;
3. Mandating Bankruptcy Education: Requiring Kourtney Jones and all owners of Bolton Law, PLLC, to complete CLEs specific to bankruptcy law;
4. Requiring Policy Review: Requiring Bolton Law, PLLC to formally file its internal bankruptcy compliance policy with this court to determine its adequacy; and
5. Entering an Order declaring the Order for Sanctions [Exhibit 112] *void ab initio*.

DATED: May 27, 2026

KOOTENAI BANKRUPTCY

/s/ Christopher Williams________________
Christopher Williams, Attorney for Debtor

**CERTIFICATE OF SERVICE**

I CERTIFY that on May 27, 2026, I filed the CLOSING ARGUMENTS causing the following CM/ECF registered participants to be served by electronic means, as more fully reflected on the Notice of Electronic Filing

| | |
|---|---|
| US Trustee | ustp.region18.bs.ecf@usdoj.gov |
| Chapter 7 Trustee, Tim Kurtz | trk@kurtztrustee.com |
| Safa Michael Riadh | safa@lawyercda.com |
| James Justin May on behalf of Trustee Timothy R. Kurtz | jjm@johnsonmaylaw.com |
| Jeffrey H. Andrews on behalf of non-filing spouse Anthony Tannar Riekena | jeffandrewslaw@yahoo.com |
| Tecla Elizabeth Druffel on behalf of Kourtney Jones | tecla@tec-law.net |
| Steven L. Taggert on behalf of Bolton Law, PLLC | staggart@olsentaggart.com |

DATED: May 27, 2026

KOOTENAI BANKRUPTCY

/s/ Christopher Williams________________
Christopher Williams, Attorney for Debtor