UNITED STATES BANKRUPTCY COURT
DISTRICT OF IDAHO

In re:

AMANDA MARIE RIEKENA,

Debtor.

Case No. 26-20041-BRW

Chapter 7

## MEMORANDUM DECISION

**Appearances:**

Christopher S. Williams, Kootenai Bankruptcy, PLLC, Hayden, Idaho, Attorney for the Chapter 7 Debtor Amanda Marie Riekena

Tecla Elizabeth Druffel, TEC LAW, PLLC, Lewiston, Idaho, Attorney for Kourtney Jones

Jeffrey H. Andrews, Hayden, Idaho, Attorney for Zachary Tannar Riekena

Steven L. Taggart, Olsen Taggart PLLC, Idaho Falls, Idaho, Attorney for Bolton Law, PLLC

James Justin May, Johnson May, Boise, Idaho, Attorney for the Chapter 7 Trustee Timothy R. Kurtz

## I.  INTRODUCTION

The Court held an evidentiary hearing on May 12 and 13, 2026, regarding two pending motions before the Court: the *Amended Motion to Enforce the Automatic Stay and for Sanctions* (Doc. No. 37) (the "Sanctions Motion") filed by the chapter 7 Debtor Amanda Marie Riekena (the "Debtor") and the *Motion to Dismiss, Abstain or Retroactively Annul the Automatic Stay* (Doc. No. 55) (the "Opposition Motion") filed by Bolton Law, PLLC ("Bolton Law"), Zachary Tanner Riekena ("Mr. Riekena"), and Kourtney Jones ("Ms. Jones") (collectively, the "Opposing Parties").  The chapter 7 trustee Timothy R. Kurtz (the "Trustee") also participated at the hearing.

Following presentation of the evidence and testimony by multiple witnesses, all parties

MEMORANDUM DECISION - 1

were granted the opportunity to file written closing arguments on or before May 27, 2026. Those closing arguments have been filed. *See* Doc. No. 81 (the Debtor's closing brief); Doc. No. 82 (the Trustee's closing brief), and Doc. No. 83 (the Opposing Parties' closing brief).

The Court has reviewed all the relevant filings, considered the arguments of the parties, reviewed and evaluated all exhibits admitted during the evidentiary hearing, and evaluated and weighed the testimony and the credibility of the witnesses that testified at the hearing. This Memorandum Decision resolves the issues presented by the Sanctions Motion and the Opposition Motion. FED. R. BANKR. P. 9014 and 7052.[1]

## II. SUBJECT MATTER JURISDICTION, AUTHORITY, AND VENUE

The Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334(b) as referred to it by the district court pursuant to General Order No. 349. This is a "core" proceeding and is within the Court's constitutional authority to adjudicate via final order. 28 U.S.C. § 157(b)(2)(A), (G), and (O). Venue is appropriate in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## III. FINDINGS OF FACT

The Debtor filed this chapter 7 case on February 2, 2026, at 5:13 p.m. (PT) via a skeletal petition.[2] Doc. No. 1. Prior to the bankruptcy filing, the Debtor and Mr. Riekena were litigating a divorce proceeding under case number CV28-24-8457 filed in the District Court of the First Judicial District of the State of Idaho, in and for the County of Kootenai (the "Divorce Case").

---

[1] Hereinafter, unless otherwise indicated, all section citations are to the Bankruptcy Code, 11 U.S.C. §§ 101 –1532, and all citations to a "Rule" are to the Federal Rules of Bankruptcy Procedure.

[2] Generally, in the bankruptcy context, a "skeletal petition" or "skeletal filing" means that only the petition was filed without various other required documents, such as bankruptcy schedules and the Statement of Financial Affairs form. *See* Doc. No. 1 (docket entry text listing the various documents needing to be filed and the deadline for those documents).

MEMORANDUM DECISION - 2

Exs. 115 and 216. The Debtor is the Petitioner in the Divorce Case and Mr. Riekena is the Respondent. The Divorce Case has been pending for some time; it was filed on December 26, 2024. By the time this bankruptcy was filed, the parties and the state court had addressed several issues, but a divorce decree had not been entered. During this time, the Debtor had several different counsel, had represented herself, and ultimately hired Safa Riadh as her current counsel. Mr. Riekena was represented in the Divorce Case by Ms. Jones, who is an associate of Bolton Law.

During the pendency of the Divorce Case, multiple unsuccessful attempts were made by Mr. Riekena, via Ms. Jones and Bolton Law, to compel the Debtor to comply with her initial disclosure requirements as well as to respond to discovery served on her. *See* Ex. 217 (multiple letters dated February 2025–August 2025, from Bolton Law to the Debtor and her prior state court counsel seeking disclosures required under the Idaho Rules of Family Law Procedure); Ex. 218 (two letters in July 2025, from Bolton Law to the Debtor, who then represented herself in the Divorce Case, explaining the deficiencies in the Debtor's responses to served discovery); Ex. 219 (November 2025 declaration from Ms. Jones in support of a motion to compel discovery); Ex. 220 (November 2025 declaration from Ms. Bolton, owner of Bolton Law, in support of a motion to compel mandatory disclosures); Ex. 221 (motion to compel discovery filed by Bolton Law on behalf of Mr. Riekena in the Divorce Case requesting the state court to compel responses to discovery, dated November 2025); Ex. 222 (motion to compel mandatory disclosures filed by Bolton Law on behalf of Mr. Riekena to compel the Debtor to provide mandatory disclosures, dated November 2025); Ex. 223 (state court order requiring the Debtor to comply and respond to discovery, dated December 12, 2025); Ex. 224 (state court order requiring the Debtor to comply with her mandatory disclosure requirements, also dated December 12, 2025).

MEMORANDUM DECISION - 3

With the issue of compliance with disclosure and discovery obligations coming to a head, on February 2, 2026, the state court heard a motion for sanctions filed by Mr. Riekena as well as his motion for leave to amend answer and counterclaim, among other matters.  Ex. 213.  During the hearing, the state court determined and orally ruled that the Debtor would be in default for her failure to abide by the discovery rules and process.  Additionally, the state court granted Mr. Riekena's request to amend the answer and counterclaim.  Specifically, as a consequence for the Debtor's discovery failures in the case and as a consequence for them, the state court orally ruled:

> So default would be granted on paragraphs [in the amended answer and counterclaim] beginning 18, 19, 20, 21, 22, 23, 24, 25, and 26. And again, as I indicated, I think 24, 25, and 26, and 23, I think that . . . would just simply not be disputed.  That relates to indemnification, revocation of beneficiary, so [the court] would enter default on that as well.  Twenty-seven, which relates to retirement accounts, and that will be subject to default.  If you'll prepare the order and the default, Ms. Jones.

Ex. 213 p. 26, lines 15-23.  The paragraphs cited in the state court's oral ruling reference the amended answer and counterclaim, which order granting the amendment as well as a copy of the amended answer and counterclaim were admitted into evidence.  *See* Ex. 227.

As referenced in the oral ruling, paragraph 18 divides Mr. Riekena and the Debtor's separate personal property acquired before or after marriage and makes it "their sole and separate property free from any claim by the other party."  *Id.* at 15.

Paragraph 19 deals with the parties' community personal property:

> A.  The parties have acquired community personal property during the pendency of the marriage.  The Court should allocate said personal property to the parties in a fair and equitable manner as outlined in the attached Inventory of Property attached hereto and incorporated herein as Exhibit 1, and pursuant to Idaho Code Section 32-712.  Upon division, said property should be deemed the sole and separate property of the party to whom it is awarded

MEMORANDUM DECISION - 4

free from any claim by the other party.

**B.** Any property not listed on the Inventory of Property upon entry of a Judgment and Decree of Divorce or otherwise agreed to should become the sole and separate property of the party who has possession of said property, and it should remain free from any claim by the other party.

*Id.* (bold in original). The "Inventory of Property" is not attached to Exhibit 227, however. For it, reference was made to Exhibit 106, which is the proposed "Partial Judgment & Decree of Divorce" that includes the inventory. Ex. 106 at 9-11. In that document, the division of the personal property includes what appears to be checking and saving accounts, retirement accounts, the "Marital Home," as will be discussed below, vehicles, and household items. *Id.*

Paragraph 20 deals with the parties' community real property, and awards it to Mr. Riekena:

The parties acquired certain community real property and associated land located at: 2534 Evening Star Rd., Post Falls, ID in Kootenai (hereinafter "Marital Home") during their marriage.

**A.** During the pendency of the divorce, the Respondent [Mr. Riekena] should be granted exclusive access to the Marital Home.

**B.** It would be fair and equitable that the Marital Home be awarded to Respondent as his sole and separate property. Petitioner [the Debtor] should sign a quitclaim deed within 90 days after the entry of the Judgment and Decree of Divorce.

**C.** The Respondent should pay all expenses associated with maintaining said real property, on or before the date the indebtedness or expense of the community real property becomes due, including but not limited to:
1. The monthly mortgage payment.
2. Home insurance.
3. Utilities.
4. Maintenance and upkeep.

**D.** The Respondent should not do anything to damage or devalue the Marital Home in any way pending sale or refinance.

MEMORANDUM DECISION - 5

    **E.** In no event should the Respondent incur further debt associated with the Marital Home pending final resolution of this action.

    **F.** This Court should retain jurisdiction over the Marital Home and associated land until the foregoing is fully and completely accomplished in accordance with the terms and provisions of the Judgment and Decree of Divorce.

Ex. 227 at 16 (bold in original).  Testimony during the evidentiary hearing was that the Debtor's name is on the deed to (*i.e.* she co-owns) the Marital Home; however, she did not sign the promissory note as co-obligor for funds used to purchase the home with Mr. Riekena.  The Debtor lists the Marital Home as one of her assets in her bankruptcy schedules filed in this case, with a value of $742,900, and lists a secured debt on the Marital Home.  *See* Ex. 203 at 3, 12.

Paragraph 21 deals with the parties' debts, and divides them up:

    **A.** The parties have incurred certain indebtedness during their marriage, and it would be fair that the same be equitably divided between them as set forth in the Schedule of Debts attached hereto and incorporated herein as **Exhibit 2**.  Said debts should henceforth be deemed the sole and separate debt of the party to whom it is awarded.

    **B.** Except as outlined in the Schedule of Debts, any debt in a party's name, and any debt associated with any kept property by said party, and/or not disclosed at the time of entry of a Judgment and Decree of Divorce, should be considered the sole and separate debt of that party.  It would be fair and equitable that said party timely pay said debts as they become due and indemnify and hold harmless the other party.

    **C.** It would be further just and equitable that each party be ordered to pay any debt which they incurred from and after the date of separation and indemnify and hold harmless the other therefrom.

    **D.** The Court should retain jurisdiction over the division and allocation of the community debts until such is fully and completely accomplished in accordance with the terms and provisions of the Judgment and Decree of Divorce.

Ex. 227 at 16-17 (bold in original).  The state court referred to the "Schedule of Debts," found in

MEMORANDUM DECISION - 6

this Court's record at Exhibit 106, which shows six debts from six different creditors divided between Mr. Riekena and the Debtor as their personal obligations.  Ex. 106 at 12.

Paragraph 22 prohibits the parties from using the "community's joint credit cards" or incurring community debt via loans.  Ex. 227 at 17-18.  Paragraph 23 deals with titles and endorsements required to effectuate the state court's distribution of assets.  *Id.* at 18.  Paragraph 24 calls for the parties to indemnify one another on any debt assigned to them which the other is sued upon.  *Id.*  Paragraph 25 revokes beneficiary status of life insurance policies.  *Id.*  Paragraph 26 revokes all prior wills, powers of attorney, and other instruments.  *Id.*  And finally, paragraph 27 deals with the division of the retirement accounts and the process in which to accomplish the division as was set out in Exhibit 1 to the amended answer and counterclaim.  *Id.* at 19.

After the state court's oral ruling during the February 2, 2026 hearing, on the same day, the Debtor filed this bankruptcy case at 5:13 p.m. (PT).  *See* Doc. No. 1 (listing the filing occurring at 18:13:23 (MT)); Ex. 200.  Approximately sixteen minutes after the bankruptcy case, the Debtor's bankruptcy counsel filed a Notice of Bankruptcy Filing in the Divorce Case.  Ex. 101.  Such notice was filed, according to the file stamp, on February 2, 2026, at 5:29 p.m. (PT).  *Id.*  Mr. Riadh, the Debtor's counsel in the Divorce Case, testified that when there is a filing in a state court case, the "iCourt E-file" system immediately sends an email to the attorneys involved in the case to a registered email address with a link to a copy of the document filed.  *See* Ex. 102.

There was conflicting testimony about when Ms. Jones learned of the bankruptcy filing.  Ms. Jones testified that she learned of the bankruptcy filing the morning of February 3, 2026, upon coming into the office at Bolton Law.  She testified that she did not receive the "iCourt" email on February 2 when the Notice of Bankruptcy was submitted by bankruptcy counsel for the Debtor because her firm has a general email address to receive those notices.  This general

MEMORANDUM DECISION - 7

email inbox is reviewed by an assistant at Bolton Law and may be accessed by Ms. Jones only when she is physically in Bolton Law's office. At the time of the filing of the Notice of Bankruptcy, Ms. Jones testified that she was at home.

In contrast, Mr. Riadh testified that after seeing the notice of bankruptcy filed by the Debtor's bankruptcy counsel on February 2, he had a phone call with Ms. Jones advising her that the Debtor had filed bankruptcy and that the automatic stay was in place. On rebuttal, to address Ms. Jones's contradictory testimony, Mr. Riadh reiterated more directly that he had that telephone conversation with Ms. Jones at about 5:30 p.m. (PT) on February 2, during which he told Ms. Jones that the Debtor had filed the bankruptcy case. In addition, the Debtor offered Exhibit 117, which is a phone record from Mr. Riadh's mobile phone provider showing that he made the call to Ms. Jones at 5:30 p.m., at a phone number acknowledged by Ms. Jones as being her personal mobile phone.

Ms. Jones does not dispute the call occurred but recalls the substance of it differently and testified that Mr. Riadh did not tell her that the Debtor had *filed* the bankruptcy case, but rather that she *intended to file* a bankruptcy case, as was apparently mentioned (or threatened) multiple times in the past by the Debtor during the Divorce Case. Again, in her prior testimony, Ms. Jones testified that she learned of the bankruptcy filing when she came into work on the morning of February 3, 2026, when she reviewed the Notice of Bankruptcy (Ex. 102).

The timing of when Ms. Jones learned of the bankruptcy filing is important because after midnight in the early morning of February 3, 2026—postpetition—Ms. Jones submitted two proposed orders and one proposed partial judgment to the state court via the "iCourt" filing system in the Divorce Case.

First, at 12:23 a.m. (PT), Ms. Jones submitted an Order for Default Judgment. *See* Ex.

MEMORANDUM DECISION - 8

104 (the Proposed Order for Entry of Default Judgment); Ex. 103 ("iCourt e-file" notice reflecting the submission of this proposed order and the date/time of the submission). The Proposed Order for Entry of Default Judgment referenced the state court's oral ruling on February 2, 2026, and granted a default against the Debtor "as it relates to the property and debt division . . . and the Court shall consider the proposed Partial Judgment submitted for signature." Ex. 104 at 1.

Second, Ms. Jones submitted, again at 12:23 a.m. (PT) on February 3, 2026, a Proposed Partial Judgment and Decree of Divorce. *See* Ex. 106 (the Proposed Partial Judgment and Decree of Divorce); Ex. 105 ("iCourt e-file" notice reflecting the submission of this proposed partial judgment and the date/time of the submission). The Proposed Partial Judgment and Decree of Divorce included the property and debt divisions as referenced in Mr. Riekena's Amended Answer and Counterclaim, as ordered by the state court in the oral ruling on February 2, 2026. *See generally* Ex. 106; *compare to* Ex. 227.

Lastly, Ms. Jones submitted, again at 12:23 a.m. (PT) on February 3, 2026, a Proposed Order for Sanctions. *See* Ex. 110 (Proposed Order for Sanctions); Ex. 111 ("iCourt e-file" notice reflecting the submission of this proposed order and the date/time of the submission). The Proposed Order for Sanctions grants Mr. Riekena's motion for sanctions and orders default against the Debtor by referencing the specific paragraphs of Mr. Riekena's amended answer and counterclaim, as stated by the state court on the record at the February 2, 2026 hearing.[3]

---

[3] This Proposed Order for Sanctions includes a reference to the paragraph "XVI" of Mr. Riekena's amended answer and counterclaim, which the Court believes is a typographical error. It is likely that this Roman numeral should have read "XXVI," to be consistent with the state court's oral ruling. In addition, there is a reference to Mr. Riekena's amended answer and counterclaim being filed on February 3, 2026. The Court understands that this amended answer and counterclaim was actually filed with the state court as a standalone document on that date, which the state court allowed to be filed pursuant to its oral ruling on February 2, 2026.

MEMORANDUM DECISION - 9

Ms. Jones testified that she submitted these orders at this time of the morning from her home office after spending time with her family that evening, and that she did so in order to get them off her to-do list. Because she was working from home, and because the "iCourt" email regarding the Notice of Bankruptcy filing by the Debtor's bankruptcy counsel did not go to her personal work email address, per Bolton Law's policy or practice, she testified that she was unaware of the fact that the bankruptcy had been filed at the time of the submission of these orders and the proposed partial judgment.

Of the three submissions by Ms. Jones in the early morning the day after the Debtor's bankruptcy case was filed, only one of them was signed by the state court. On February 3, 2026, at 2:28:13 p.m. (PT), the state court signed the Order for Sanctions, which was in the form submitted by Ms. Jones (the "Order for Sanctions"). Ex. 112.[4] The Order for Sanctions references the state court's oral ruling on February 2, grants Mr. Riekena's motion for sanctions, orders default against the Debtor on the property and debt division with reference to the specific paragraphs of Mr. Riekena's amended answer and counterclaim, and awards attorney fees to Mr. Riekena and against the Debtor for the fees and costs associated with the motion for sanctions. *Id.* at 1-2. While the Order for Sanctions was signed by the state court on February 3, it apparently did not get filed on the state court's docket until February 12, 2026. *See id.* at 1 (file stamp indicating that the order was "Filed" on February 12, 2026). Again, of the three proposed documents submitted by Ms. Jones, the Order for Sanctions was the only document signed by the state court.

---

[4] The signed order's footer indicates "Order for Entry of Default Judgment" while the caption and content of the document reference the Order/Motion for Sanctions. Thus, the Court believes the footer is a typographical error. The signed Order for Sanctions also includes the reference to paragraph "XVI," which as noted above with respect to the proposed order for sanctions, is likely a typographical error.

MEMORANDUM DECISION - 10

Also on February 3, 2026, at 10:42 a.m. (PT), Ms. Jones emailed the state court clerk as to the proposed orders that she submitted earlier that morning.  Ex. 107.  The body of the email read:

> Good morning [court clerk],
> I wanted to key you into proposed orders that were filed last night (envelope#9375090).  These were filed quickly due to notification of Petitioner's [*i.e.* the Debtor's] intent to file bankruptcy; I realize this morning that there was a formal notice filed herein at approximately 5:30 p.m. last night.  However, in light of the Court's Oral ruling that pre-dates the notice of the bankruptcy, it is our hope that the Court will review the files for signature today.
>
> If the Court is unable to do so, I imagine we will discuss them at our pretrial conference set for tomorrow afternoon.
>
> Thank you in advance.

*Id.*  This email is somewhat consistent with Ms. Jones's memory of the substance of the phone call she had with Mr. Riadh immediately after the bankruptcy was filed on February 2, 2026, as to the Debtor's *intent* to file bankruptcy as opposed to the fact that the case had already been filed.  Nevertheless, Ms. Jones's email clearly requests entry of the proposed orders and partial judgment at a time when she knew the bankruptcy case had been filed.

At the evidentiary hearing in this case, Ms. Jones testified that she did not fully understand or appreciate the extent of the automatic stay at this time, nor did she understand the consequences of violating the automatic stay.  Bolton Law apparently had no guidance with respect to these issues for Ms. Jones, who is a newer associate at the firm.  Ms. Jones equated her understanding of the automatic stay, at the time of these events, to a stay in state court divorce proceedings, which apparently lacks the robust protections and consequences of violation.  Ms. Jones testified further, convincingly, that she now understands the extent of the automatic stay and its implications, and will employ this knowledge in her future cases.

MEMORANDUM DECISION - 11

In response to Ms. Jones's email to the court clerk, at 11:00 a.m. (PT), Mr. Riadh replied to all recipients stating that entry of the postpetition orders as submitted would violate the automatic stay.  Ex. 108.  Twelve minutes later, Mr. Riadh sent a more developed email on the automatic stay issues he saw, with citation to case authority, but only to Ms. Jones and others associated with her firm, Bolton Law.  Ex. 109.  Testimony during the hearing was that this email was drafted by artificial intelligence referred to as "Co-Counsel."[5]

The next day, February 4, 2026, the parties had a pretrial conference with the state court.  Ex. 214.  Despite the Order for Sanctions granting default to Mr. Riekena as to division of the Marital Home between the parties (*see* Ex. 112 (Order for Sanctions granting default to Mr. Riekena as to paragraph 20 of the amended answer and counterclaim, which paragraph awards the Marital Home to Mr. Riekena); Ex. 227 at paragraph 20 (Mr. Riekena's amended answer and counterclaim detailing the division of the Marital Home to Mr. Riekena)), the state court still had questions related to dividing the Marital Home and whether the division of the real property as proposed was equitable.  The state court indicated that while it signed the Order for Sanctions, it did not sign the Partial Judgment and Decree of Divorce (Ex. 106) due to those questions.  *See* Ex. 214 at p. 2, line 16 – p. 3, line 12 (correcting Ms. Jones's representation that the trial in this matter is only as to child custody and support but indicating that it "had questions about the community property, the home . . . . I think I may need additional evidence and information in order to equitably divide that property.  I think I might need more information on that . . . . Why it should be – why it's equitable to divide the community property as proposed in the default judgment . . . .).  Acknowledging that the division of the Marital Home had not been completed

---

[5] It appears that the cases cited in this email exist and generally stand for the proposition stated in the email, though some only loosely; however, the citations, specifically as to the courts that had issued those decisions, are incorrect.

MEMORANDUM DECISION - 12

at that time despite the Order for Sanctions, the state court stated that they would need to "take a couple minutes at the time of the trial to address that." Ex. 214 at 3, lines 4-6.

With that issue left for later, the state court and the parties then discussed the impact of the Debtor's bankruptcy. *See generally* Ex. 214. Mr. Riadh reiterated that continuing to proceed in the Divorce Case violates the automatic stay as was entering the Order for Sanctions. *Id.* at 4. Ms. Jones contended that the oral ruling was the operative ruling by the state court, and it had preceded the bankruptcy filing. *Id.* Not only did Ms. Jones stand by this position but she further threatened attorney fees "for additional delay due to the timing in the bad[]faith filing of bankruptcy after the default went into place." *Id.* at p. 4, line 23 – p. 5, line 5.

Again, despite the suggestion by Ms. Jones that the state court had *already* divided the Marital Home via the Order for Sanctions, the state court disagreed. "In any event, the Court had indicated [earlier in this hearing] just some concerns about the community [property] . . . the [M]arital [H]ome and will need some additional information about that in terms of the default. We will be proceeding on child custody and child support . . . . regardless . . . ." *Id.* at p. 7, lines 17-23 (interruption by Mr. Riadh omitted). Therefore, only the Order for Sanctions (Ex. 112) was entered by the state court postpetition. Neither the Partial Judgment and Decree of Divorce (Ex. 106) nor the Order for Entry of Default Judgment (Ex. 104) have been signed. As such, the effect of the Order for Sanctions with respect to the Marital Home is unclear to this Court.

The state court then questioned the validity of the bankruptcy filing and the Notice of Bankruptcy filed by the Debtor's bankruptcy counsel in the Divorce Case because the notice did not attach a certified copy of the bankruptcy filing. *Id.* at 8. However, there is no dispute that the bankruptcy case had been filed, and this fact was easily verifiable via the publicly available search of filed bankruptcy cases. *See* https://pacer.uscourts.gov/.

MEMORANDUM DECISION - 13

Further, the state court discussed and asked for briefing about whether a filing of a bankruptcy case violates the state court's "joint preliminary injunction," which bars the participants in the state court from "removing from the jurisdiction of this Court any property jointly held, so parties might also wish to address that issue in terms of any potential violation of the Court's joint temporary order.  That is part of the Supreme Court-authorized form."  Ex. 214 at p. 8, lines 18-25; *see also* Ex. 228 ("Joint Temporary Preliminary Order" entered in the Divorce Case and referenced by the state court, which prohibits, among other things, "removing from the jurisdiction of [the state court] any property . . . .").

As to the hearing on February 4, 2026, the Debtor testified that she attended that hearing and was emotionally distressed by the fact that the matters in state court seemed to be proceeding forward despite her bankruptcy filing.  The Debtor further testified that her cancer had recently returned after prior treatments, which further negatively impacted her emotional wellbeing when paired with continued proceedings in the Divorce Case.  There were no exhibits or other testimony related to specific medical expenses incurred due to the Debtor's emotional distress.  The Debtor testified about physical manifestations or ailments arising from her emotional distress, however, such as worry, sleeplessness, and weight loss.  She also testified that she increased her visits to her therapist and was taken off chemotherapy because her doctor did not believe she was strong enough to continue it.

The Debtor also pointed to a voicemail message she had received from Jill Bolton, a principal of Bolton Law,[6] several months prior, as impacting her distress at the proceedings in

---

[6] Ms. Bolton attended the first day of the evidentiary hearing on these matters.  She did not attend the second day of the hearing.  Counsel for the Debtor indicated an intent to call her as a witness on the second day of the hearing but conceded that he failed to list her as a witness and had apparently not served Ms. Bolton with a subpoena to attend the hearing.

MEMORANDUM DECISION - 14

the Divorce Case despite the bankruptcy filing.  The audio recording of the voicemail left for the

Debtor by Ms. Bolton in September 2025 was admitted into evidence as Exhibit 113 and was

played for the Court during the hearing.  In the recorded message to the Debtor, Ms. Bolton said

the following:

> . . . . I also understand that you have indicated you will be filing bankruptcy . . . . I want to caution you that such a filing . . . would likely violate the [state] court's preliminary injunction and we would pursue potential contempt action against you, which carries potential jail time and fines . . . and if we prevail you would be required to pay our fees and costs . . . so we would strongly encourage you against violating the existing court order and putting . . . at risk any . . . assets of the community, including the community home . . . which would be affected if you filed for bankruptcy.

Ex. 113 at 00:37-01:15 (audio recording).

The Debtor testified that because of the threats by Ms. Bolton, she was concerned about

going to jail for filing bankruptcy.  The Debtor testified further that had she not been threatened

in this fashion, she may have filed bankruptcy much earlier than she did.

To rebut and impeach the Debtor's testimony in regard to her emotional distress, the

Opposing Parties introduced a "TikTok" video and comment thereto posted by the Debtor

shortly after the February 4, 2026 hearing.[7]  The video and comment were admitted at Exhibit

241 as impeachment evidence to the Debtor's earlier testimony of emotional distress.  The video

was played for the Court during the hearing.  It showed the Debtor dancing and otherwise

interacting with Mr. Riadh after what appeared to be a court hearing.  The comment to the video

"tagged" a friend and stated: "took an L that day and pulled an UNO no one saw coming."  Ex.

---

[7] There was testimony regarding when the clips within the "TikTok" were filmed because the Debtor is wearing different outfits.  The Debtor testified that she could not recall the exact dates in which the TikTok was filmed but stated that they were likely filmed on February 2, 2026, or prior because they had only been to court a few times after that.  Mr. Riadh testified that the first clip was filmed on February 2, after the motion for sanctions hearing, but that he could not recall the date of the others.

MEMORANDUM DECISION - 15

241 (emoji omitted).

In examining the Debtor, the Opposing Parties inferred that the reference to pulling "an UNO" referred to the well-known card game and to the bankruptcy filing, which filing would reverse the Debtor's stated "L"—meaning loss—that occurred when the state court entered its oral ruling on February 2 granting Mr. Riekena's motion for sanctions. However, the Debtor neither fully acknowledged this meaning nor provided any other explanation of the comment.

Additionally, to rebut and impeach the Debtor's testimony about her concern with being arrested for filing a bankruptcy case, as threatened by Ms. Bolton, the Opposing Parties introduced an impeachment exhibit which was a text message exchange between the Debtor and Mr. Riekena. Ex. 242. The text message exchange is dated September 15, presumably in 2025. *Id.* In it, the Debtor sent what appears to be a copy of the voicemail left by Ms. Bolton, and stated, among other things, "[p]eople are watching, don't stop now. It's illegal as [expletive] to threaten me with charges or have your big dog attorneys do it. Your assets are mine. We go down together." Ex. 242 at 1. Further, the Debtor stated "[w]ild of your attorney to leave voicemails where she's breaking federal law. Check yourself." *Id.* The Opposing Parties also used Exhibit 242 to support their arguments that this bankruptcy was filed by the Debtor in bad faith.

Turning back to the state court proceedings, that court held another hearing on February 24, 2026, which was the date set for trial in the Divorce Case. Ex. 215 (transcript of this proceeding). The bankruptcy case was discussed, as was the fact that the Debtor had pending the Motion for Sanctions in this Court, the scope of the automatic stay under § 362(a), and the exceptions to the automatic stay in divorce proceedings found at § 362(b)(2). The state court stated that it felt hindered in its ability to proceed even on those matters excepted from the

MEMORANDUM DECISION - 16

automatic stay under § 362(b)(2) because of the relatedness of the custody and divorce proceedings with the division of assets and debts due to the allegations of the parties in the Divorce Case.  Nevertheless, Mr. Riadh pushed the issue of custody with the state court at this hearing, indicating that the Debtor should be given more parental time with the parties' minor children than had previously been determined by the state court.  Significant discussion was then held by the parties as to the Debtor's failure to abide by the state court's order on custody and visitation with respect to ordered alcohol testing.  Ultimately, the state court stayed the Divorce Case pending further hearings in this Court, modified the custody/visitation order related to alcohol testing for the Debtor, and addressed a change to the child support.  *See generally* Ex. 215.

As part of the Opposing Parties' case in chief, and in support of their Opposition Motion, which included a motion to dismiss this chapter 7 case as a bad faith filing, they inquired extensively of the Debtor regarding her debts and whether the creditors listed on her schedules, including those on Exhibit 203, were pressuring her for payments prior to the bankruptcy filing.[8] Additionally, the Opposing Parties inquired of both the Debtor and Mr. Riekena regarding the purchase of two homes owned during their marriage—the Lemonwood and Evening Star properties.[9]  There was also significant testimony about whether any of the alleged medical

---

[8] As of the date of this Memorandum Decision, eight proofs of claim have been filed in this bankruptcy case for a total amount of debt of $80,073.91.  One proof of claim is filed by Mr. Riadh, the Debtor's state court counsel in the Divorce Case.  Claim No. 2-2; Ex. 211.  Another was filed by Debtor's previous state court counsel in the Divorce Case, Mr. Waite.  Claim No. 7-1.  Four proofs of claim are filed by individuals whom the Court understands are friends or family members of the Debtor.  *See* Claim Nos. 4-1, 5-1, 6-1 and 8-1.  The Trustee's Notice of Assets in this case states that proofs of claim are due on or before July 20, 2026.  Doc. No. 50.  The Debtor's Summary of Assets and Liabilities indicated that the amount of unsecured debt owed by the Debtor totals $160,108.29.  Doc. No. 26 at 1.

[9] There was extensive testimony on this topic, principally regarding the nature of Debtor's and Mr. Riekena's respective ownership interests.  *See* Exs. 232-37.  The Opposing Parties assert that this dispute could be resolved by the state court and that such testimony and evidence demonstrate the
(Continued)

MEMORANDUM DECISION - 17

debts, as included in the Debtor's schedules, were covered by insurance the Debtor had in place through Mr. Riekena.[10]

## IV. PROCEDURAL HISTORY

This bankruptcy case was filed on February 2, 2026.  Doc. No. 1.  An initial hearing on the Debtor's original motion for sanctions was held on February 10, 2026, at which time the bankruptcy judge originally assigned to the case announced his intent to recuse.  Doc. No. 22 (minute entry); Doc. No. 23 (order recusing and assigning the bankruptcy case to the undersigned).  Following reassignment, this Court held a preliminary hearing on the Debtor's motion on February 17, 2026.  Doc. No. 35 (minute entry).  The parties sought and were granted an extended date for an evidentiary hearing on this matter.  An evidentiary hearing was held on May 12 and 13, 2026.  Doc. Nos. 69 and 70 (minute entries).  After submission of written closing arguments filed on May 27, 2026, the Court took the matter under advisement.

## V. CONCLUSIONS OF LAW
## AND ANALYSIS

### A.  The Opposition Motion

In the Opposition Motion, the Opposing Parties seek to dismiss the Debtor's chapter 7 case, and if this Court declines to do so, for this Court to abstain in favor of the state court in the

---

Debtor's misleading characterization of her and Mr. Riekena's ownership interests and ultimately the Debtor's bad faith.  *See* Doc. No. 83 at 19, 21.

[10] Additionally, significant time was taken at the evidentiary hearing to explore whether and when Mr. Riekena provided the Debtor with a copy of her insurance card (Ex. 229) so the Debtor could use the card to obtain treatment covered by the insurance.  The Debtor testified that Mr. Riekena only recently provided this insurance card to her despite purportedly asking him for it repeatedly.  Also, the Debtor was asked about the insurance coverages afforded her under the Medical Plan (Ex. 230), which apparently covers the Debtor through Mr. Riekena's employment.  The thrust of this testimony was that some or perhaps all of the medical debt listed in the Debtor's schedules may be covered by insurance.  *See also* Ex. 231 (listing the "medical out-of-pocket maximum" of $1,500 to be paid by the Debtor under her insurance).

MEMORANDUM DECISION - 18

Divorce Case or to annul the automatic stay to give effect to the Order for Sanctions entered by the state court postpetition. Doc. No. 55. The Court will consider each of these requests in turn.

### 1. Motion to Dismiss

#### a. Applicable Law on Dismissal of a Chapter 7 Case

While the Opposing Parties' closing brief (Doc. No. 83 at 18) discussed the statutory basis for dismissal under § 707(b)(3), the analysis for dismissal in this case is under § 707(a), which was briefly cited by the Opposing Parties in the Opposition Motion (Doc. No. 55 at 5). Under the Code, in the event of a debtor with "primarily consumer debts:"

> [o]nly the judge or United States trustee . . . may file a motion under section 707(b), if the current monthly income of the debtor . . . as of the date of the order for relief, when multiplied by 12, is equal to or less than—
>
> (A) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;
>
> (B) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals . . . .

§ 707(b)(6)(A) and (B); *see also In re McVicker*, 546 B.R. 46, 53 (Bankr. N.D. Ohio 2016) ("Under Section 707(b), a creditor . . . would not have standing [to] bring an action to dismiss for 'abuse' in a case involving primarily consumer debts unless the debtors were over the median income level. Only the bankruptcy judge, the Office of the United States Trustee, or in non-U.S. Trustee states, a bankruptcy administrator can bring an action for 'abuse' by debtors who have income below the median level for their state.") (citing § 707(b)(6) and 6 COLLIER ON BANKRUPTCY ¶ 707.03[2], p. 707-20 (16th ed. 2013)).

In this case, the Debtor has primarily consumer debts (*see* Doc. No. 1 at 6 (question 16); *see also* § 101(8) (defining "consumer debt")) and has a below median family income (*see* Doc.

MEMORANDUM DECISION - 19

No. 29 (calculating the Debtor's current monthly income to be $0)).[11]  As a result, only a judge

or the United States Trustee has standing to move for dismissal under § 707(b) in this case, and

the Opposing Parties do not meet this standing requirement.

Instead, the Opposing Parties' request to dismiss this bankruptcy case is properly made

under § 707(a).  However, no analysis of § 707(a) was provided in the Opposing Parties' filings.

Nevertheless, the Court will address those standards.

Section 707(a) provides: "The court may dismiss a case under this chapter only after

notice and a hearing and only for cause . . . ."  § 707(a).  That section further provides a list of

what may constitute "cause;" however, the list is "illustrative and not exhaustive."  *Neary v.*

*Padilla (In re Padilla)*, 222 F.3d 1184, 1191 (9th Cir. 2000); § 707(a)(1) – (3).  None of the

listed grounds are applicable or alleged; as such, the analysis is whether the Opposing Parties

have proven another basis for dismissal under § 707(a).

When considering dismissal based on grounds outside those listed in § 707(a), courts in

the Ninth Circuit apply a two-part inquiry.  *Sherman v. Securities and Exch. Comm. (In re*

*Sherman)*, 491 F.3d 948, 970 (9th Cir. 2007) (citing *In re Padilla*, 222 F.3d at 1194)).  The Ninth

Circuit has instructed:

> First, [the bankruptcy court] must consider whether the
> circumstances asserted to constitute "cause" are "contemplated by
> any specific Code provision applicable to Chapter 7 petitions."  If
> the asserted "cause" is contemplated by a specific Code provision,
> then it does not constitute "cause" under § 707(a).  If, however, the
> asserted "cause" is not contemplated by a specific Code provision,

---

[11] Even if the Court limited the Debtor to a household size of one—thereby eliminating the Debtor's claim to her children as part of her household size—the median family income in Idaho with just "1 Earner" is $71,531 per year.  *See* United States Trustee Website, *available at:* *https://www.justice.gov/ust/eo/bapcpa/20251101/bci_data/median_income_table.htm* (last visited June 15, 2026) (listing the median family income by family size for Idaho cases filed between November 1, 2025, and March 31, 2026).  The Court has no evidence before it to reject the Debtor's sworn schedules and to conclude instead that her income exceeds this threshold, despite some suggestion by the Opposing Parties that the Debtor's schedules understate her income.

MEMORANDUM DECISION - 20

then we must further consider whether the circumstances asserted otherwise meet the criteria for "cause" for discharge under § 707(a).

*Id.* at 970 (citing *In re Padilla*, 222 F.3d at 1193-94) (internal citations omitted).

Importantly, the Ninth Circuit held in *In re Padilla* that "bad faith" is not grounds to dismiss a chapter 7 case under § 707(a). *See* 222 F.3d at 1193 (analyzing the issue of first impression in the circuit and concluding that "bad faith per se can properly constitute 'cause' for dismissal of a Chapter 11 or Chapter 13 petition *but not of a Chapter 7 petition under § 707(a)*") (emphasis added); *see also White v. U.S. Trustee (In re White)*, 2025 WL 1066645, at *5-8 (9th Cir. BAP Apr. 8, 2025) (conducting a thorough analysis of *In re Padilla* and *In re Sherman* by the Ninth Circuit, as well as subsequent U.S. Supreme Court case law, and concluding that while the Ninth Circuit holding in *In re Padilla* under § 707(a) that "bad faith" is not grounds to dismiss a chapter 7 case is the "minority view," it is nevertheless the law in this circuit). As relevant here, in *In re Sherman*, the Ninth Circuit addressed several types of misconduct that did not give rise to a basis for dismissal for "cause" under § 707(a), including misrepresentation by the debtor of his liabilities and expenses and using the bankruptcy court as a "refuge" from the jurisdiction of other courts. *In re Sherman*, 491 F.3d at 971-73. Instead, *In re Sherman* noted that other provisions of the Bankruptcy Code applied to those actions and provide a remedy for impacted parties in interest other than dismissal. *Id.*; *see also In re White*, 2025 WL 1066645, at *10 (analyzing *In re Sherman* and *In re Padilla* and concluding that "inaccuracy in disclosure" by the debtor has remedies under the Code per § 727(a)(4) as opposed to dismissal for "cause" under § 707(a)).

### b. Application of Law to the Opposition Motion's Request for Dismissal of this Chapter 7 Case

Applying these principles, the Opposition Motion is denied as to the request to dismiss

MEMORANDUM DECISION - 21

this chapter 7 case.  To the extent the motion seeks dismissal under § 707(b), only the judge or the U.S. Trustee has standing to pursue such a motion pursuant to § 707(b)(6) because the Debtor has primarily consumer debts and because she is a below-median income earner.  The Opposing Parties therefore do not have standing to seek this relief on the grounds stated, and the relief requested is denied.

Going further, and applying the principles of § 707(a), dismissal of this chapter 7 case is not appropriately granted.  The Opposing Parties contend the Debtor filed this bankruptcy case to avoid the state court determination on sanctions in the Divorce Case, and that the allegations present merely a two-party dispute.  *See* Doc. No. 55 at 8.  As additional evidence of bad faith, the Opposing Parties accuse the Debtor of being solvent, not claiming any exemptions as to the Marital Home or a car, and argue that she was not under any "financial pressure."  *Id.*  Finally, as further indicia of bad faith, the Opposing Parties contend that the Debtor was not truthful in her schedules, had financial assistance from her family and friends, and the medical debt she claimed in her schedules was covered in full by insurance provided by Mr. Riekena.  Doc. No. 83 at 20-26.  As to the legal analysis, the Opposing Parties rely on the bad faith analysis of chapter 11 cases from this Court to support their request for dismissal.  Based on the controlling authority cited above, the analysis of dismissal for bad faith in the chapter 11 context—or chapter 13 for that matter—does not apply under § 707(a).

Applying *In re Padilla* and *In re Sherman,* bad faith, in its many forms as alleged by the Opposing Parties in the Opposition Motion, is not grounds to dismiss this chapter 7 case for "cause" under § 707(a).  The actions and omissions alleged as cause by the Opposing Parties are covered by other provisions of the Code, including but not limited to, § 727(a)(4) and § 362(d), which provide remedies for parties in interest faced with facts like these.  Such

MEMORANDUM DECISION - 22

remedies do not include dismissal under § 707(a).  Therefore, as to the request for dismissal of this chapter 7 case, the Opposition Motion is denied.

2.  Motion to Abstain

a.  Law as to Abstention

In the alternative, the Opposing Parties seek abstention by this Court in favor of the state court, presumably to continue the division of the community property, give effect to the Order for Sanctions, and to avoid any sanctions or damages award by this Court under § 362(k).  Doc. No. 55 at 6-7, 9; Doc. No. 83 at 27-28.  There is no indication from the Opposing Parties whether they seek mandatory or permissive abstention under 28 U.S.C. § 1334(c); however, they quote the permissive abstention language of 28 U.S.C. § 1334(c)(1).  *See* Doc. No. 55 at 6 (quoting 28 U.S.C. § 1334(c)(1)).[12]  As such, the Court will conduct that analysis.

Section 1334(c)(1) of title 28 provides:

> nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or with respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to cases under title 11.

---

[12] Mandatory abstention requires the proceeding involved to be under the bankruptcy court's "related to" jurisdiction, 28 U.S.C. § 1334(c)(2); however, allegations of automatic stay violations are "core" proceedings under title 11 over which this Court has exclusive jurisdiction.  *See* 28 U.S.C. § 157(b)(2)(G); § 362(a); *Gruntz v. Cnty. of Los Angeles (In re Gruntz)*, 202 F.3d 1074, 1083-88 (9th Cir. 2000) (en banc) (holding state court rulings regarding the scope and applicability of the automatic stay are not binding on bankruptcy courts).  Similarly, abstaining is not appropriate under mandatory abstention on questions of what is property of the estate and administration of the bankruptcy estate, as well as proceedings regarding the liquidation of estate assets or adjustment of the debtor-creditor relationship because those matters are "core" proceedings that arise under title 11.  *See* 28 U.S.C. § 157(b)(2)(A) and (O); § 541(a); *In re Becker*, 136 B.R. 113, 117 (Bankr. D.N.J. 1992) (conducting a thorough analysis and collecting cases in a divorce case and holding "[s]ince the determination of the bankruptcy estate's interest in property is a core proceeding, mandatory abstention under 28 U.S.C. § 1334(c)(2) does not apply"); *Kostenko v. Kostenko (In re Kostenko)*, 2015 WL 4154133, at *8 (9th Cir. BAP July 9, 2015) ("The bankruptcy court has exclusive jurisdiction over property of the estate, including community property.  28 U.S.C. § 1334(e)(1); § 541(a)(2).  This exclusively is so even when there is a concurrent dissolution proceeding in state court.") (citation omitted).

MEMORANDUM DECISION - 23

28 U.S.C. § 1334(c)(1).

In determining whether to exercise this discretion, the Ninth Circuit has established

twelve factors for consideration:

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the bankruptcy court''s] docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.

*Christensen v. Tucson Estates., Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1167 (9th Cir.

1990); *see also Long v. Mortg. Sols. of Colorado, LLC (In re Long)*, 2026 WL 1472965, at *4-10

(Bankr. D. Idaho May 26, 2026) (conducting the *In re Tucson Estates, Inc.* analysis).

The bankruptcy court's determination whether to permissively abstain is subject to the

court's discretion. *Falk v. Falk (In re Falk)*, 2013 WL 5405564, at *5 (9th Cir. BAP Sept. 26,

2013) (citations omitted).

In order to evaluate an abstention request, the Court must determine the extent of the

bankruptcy estate's interest in the Debtor's assets. Because the state court had not divided the

assets of the community at the time of this bankruptcy case, the community property of the

Debtor and Mr. Riekena is property of the bankruptcy estate, over which this Court has

jurisdiction and authority. Section 541(a)(2) provides:

> (a) The commencement of a case under section 301 . . . of this title

MEMORANDUM DECISION - 24

creates an estate.  Such estate is comprised of all the following property, wherever located and by whomever held: . . . . (2) All interests of the debtor and the debtor's spouse in community property, as of the commencement of the case that is—(A) under the sole, equal, or joint management and control of the debtor; or (B) liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable.

§ 541(a)(2).  "For purposes of § 541(a)(2), all community property not yet divided by a state court at the time of the bankruptcy filing is property of the bankruptcy estate." *Dumas v. Mantle (In re Mantle)*, 153 F.3d 1082, 1085 (9th Cir. 1998); *see also Keller v. Keller (In re Keller)*, 185 B.R. 796, 799-800 (9th Cir. BAP 1995) ("When a bankruptcy petition is filed prior to the final disposition of property between divorcing spouses, the community property comes within the jurisdiction of the bankruptcy court to assure fairness to the creditors of the individual spouses and the marital estate. . . [o]nce dissolution has been accomplished, however, the final judgment is *res judicata* as to the division of property and is binding on the bankruptcy trustee.").  "While [§ 541(a)(2)] defines what interests of the debtor must be transferred to the bankruptcy estate, it does not address 'the threshold questions of the existence and scope of the debtor's interest in a given asset.'"  *In re Mantle*, 153 F.3d at 1084 (quoting *State of Cal. v. Farmers Markets, Inc. (In re Farmers Markets, Inc.)*, 792 F.2d 1400, 1402 (9th Cir. 1986)).  To determine this, bankruptcy courts must look to applicable state law to define what is in the bankruptcy estate.  *Id.* (citing *Butner v. United States*, 440 U.S. 48, 55 (1979)).

Idaho is a community property state.  *See* Idaho Code §§ 32-901 to 32-929.  "In divorce cases, Idaho courts have a duty not only to dissolve the parties' marital status, but also to make an equitable distribution of the parties' community property[.]" *Chavez v. Barrus*, 192 P.3d 1036, 1044 (Idaho 2008); *see also* Idaho Code § 32-713 (providing that "[t]he court, in rendering a decree of divorce, must make such order for the disposition of the community property").  In

MEMORANDUM DECISION - 25

doing so, community assets are not divided until dissolution of the marriage by decree. *See Suter v. Suter*, 546 P.2d 1169, 1175 (Idaho 1976) (stating Idaho law "provides for the just assignment of community property upon the dissolution of the marriage"); *see also Reed v. Reed*, 339 P.3d 1109, 1113 n.5 (Idaho 2014) (stating that "[a]n oral statement by the court or even a stipulation by the parties does not constitute the termination of the marriage.  A marriage continues until the entry of a final judgment terminating it"); *O'Brien v. O'Brien*, 233 P.2d 1030, 1033 (Idaho 1951) (stating that "[t]he District Court may, during the pendency of a divorce suit, make an order for the custody of the community property and upon the granting of a divorce may, of course, decree its distribution"); *Lamm v. Preston*, 522 P.3d 1246, 1255 (Idaho 2023) (stating that "[p]arties to a divorce 'have a right to have their respective interests in their property after they are divorced, definitely and finally determined in the decree which divorces them'" (quoting *Papin v. Papin*, 454 P.3d 1092, 1117 (Idaho 2019))).

This Court has previously addressed an intervening bankruptcy by a spouse during the pendency of a divorce under Idaho law.  "Even if spouses are in the process of divorce when one of them files for bankruptcy, as long as the divorce has not been finalized and property has not yet been divided by the state court's decree, all community property becomes part of the bankruptcy estate of the debtor-spouse." *Hopkins v. Idaho State Univ. Credit Union (In re Herter)*, 456 B.R. 455, 465 (Bankr. D. Idaho 2011); *see also In re Kido*, 142 B.R. 924, 925-26 (Bankr. D. Idaho 1992) ("[W]here one party to the community files a petition for relief, the provisions of 11 U.S.C. § 541(a)(2) cause the community property interests of both parties, or, the entire community, to become property of the estate, at least, in Idaho where the community property is under the control and management of both parties.").

In contrast to what constitutes property of the bankruptcy estate, as well as the

MEMORANDUM DECISION - 26

administration and liquidation of that property, divorce, alimony, maintenance, and custody are

"exclusively matters of state law," and state courts are the appropriate courts to determine those

issues. *Siragusa v. Siragusa (In re Siragusa)*, 27 F.3d 406, 408 (9th Cir. 1994) (citing *In re*

*Harrell*, 754 F.2d 902, 907 (11th Cir. 1985)); *see also Carver v. Carver*, 954 F.2d 1573, 1579-80

(11th Cir. 1992) (conducting a permissive abstention analysis and noting that bankruptcy courts

should "tread very carefully when asked to impose sanctions for violations of the automatic stay

where the actions underlying the violation involve *alimony, maintenance, or support*") (emphasis

added).

As endorsed by the Ninth Circuit Bankruptcy Appellate Panel, the *Collier* treatise has

particularly apt comments and analysis relating to a bankruptcy filing prior to a state court

dividing the assets held by spouses as community property:

> Frequently, a bankruptcy case is commenced by one spouse during
> the pendency of a dissolution or divorce proceeding.    The
> bankruptcy petition terminates the jurisdiction of the divorce or
> dissolution court over, at least, the non-exempt assets of the spouses
> until all creditors are paid in full.  The jurisdiction of the bankruptcy
> court is exclusive because the initiation of divorce or dissolution
> proceedings does not terminate either spouses' management and
> control over community property by placing the property in *custodia*
> *legis* of the divorce court.

*Teel v. Teel (In re Teel)*, 34 B.R. 762, 764 (9th Cir. BAP 1983) (quoting 4 COLLIER ON

BANKRUPTCY (15th ed. 1938) ¶ 541.15) (other citation omitted).[13]  When this occurs, the *Collier*

treatise, as approved by the Ninth Circuit BAP, states:

> If legitimate creditor interests exist in the case of a solvent debtor

---

[13] While the *In re Teel* case is from 1983, the *Collier* treatise currently utilizes this same analysis.
However, the second sentence in the above block quote has been changed as follows: "In such
circumstances, until all creditors are paid in full, the bankruptcy petition terminates the jurisdiction of the
divorce or dissolution court over, at least, the spouses' nonexempt assets that have not previously been
partitioned."  5 COLLIER ON BANKRUPTCY ¶ 541.11[4] (Richard Levin & Henry J. Sommers eds., 16th
ed.).

MEMORANDUM DECISION - 27

> involved in a divorce proceeding, a prudent approach would be for the bankruptcy court to expeditiously liquidate sufficient assets to pay creditors in full and then return the case to the dissolution court. This procedure has been recommended because the divorce or dissolution court is a wholly inadequate forum for resolving creditor claims.

*Id.* (other citation omitted); *see also In re Becker*, 136 B.R. at 118-20 (declining to permissibly abstain to a divorce proceeding regarding property of the bankruptcy estate and relying in part on the above analysis, discussing problems that have arisen in that court's experience when it has abstained in such a circumstance, and particularly noting issues with the chapter 7 trustee's administration of the estate).

### b.  Application of Law to the Opposing Parties' Request for Abstention

Applying these principles and considering the *In re Tucson Estates, Inc.* factors, the Court declines, at this time, to permissively abstain under 28 U.S.C. § 1334(c)(1).  In doing so, the Court gives significant weight to the factor of efficient administration of the estate.  This factor heavily favors declining abstention for the reasons addressed in *In re Becker* and under the analysis of *In re Teel*.  This Court is the appropriate forum for the prompt administration and liquidation of bankruptcy estate assets for the benefit of the estate, its creditors, and other parties in interest.  The Court believes, under the facts of this case, that efficient administration of the estate is best left to this Court rather than deferring to the state court for further action affecting estate property, particularly given the involvement of creditors in this bankruptcy case.

Next, state law issues do not predominate when it relates to the bankruptcy estate and administration of estate property; however, it is likely Idaho law applies via operation of the Bankruptcy Code.  This Court is equipped to deal with such an analysis as it regularly does when administering estates and determining state law property rights.  As such, this factor does not support abstention.  Third, there appears to be no difficulty or unsettled law with respect to this

MEMORANDUM DECISION - 28

case, and as such, this factor is neutral.

As to the next factor, there is a related state court proceeding (*i.e.* the Divorce Case); however, this Court concludes that it may determine the issues as to property of the bankruptcy estate while deferring to the state court with respect to its obligations and authority to decide issues related to divorce, custody, maintenance, and support. As such, while this factor may support abstention, as applied in this case, it does not weigh significantly in favor of abstention and is at best neutral. Fifth, there is no jurisdictional basis other than 28 U.S.C. § 1334 for federal jurisdiction over this case, which factor weighs in favor of abstention. Next, the degree of relatedness to the chapter 7 case weighs heavily in favor of declining abstention. The issue for this Court concerns property of the bankruptcy estate and its administration and liquidation for the benefit of the estate and its creditors. This is a quintessential bankruptcy court function and obligation this Court undertakes routinely. As such, this factor supports declining abstention. Seventh, this is a "core" proceeding that addresses property of the bankruptcy estate under § 541(a) and the appropriate adjustment of the debtor-creditor relationship with respect to the claims and assets. Additionally, determinations of alleged stay violations are also "core" proceedings over which this Court has exclusive jurisdiction. *In re Gruntz*, 202 F.3d at 1083-88. This factor also weighs in favor of declining abstention.

Eighth, the Court concludes severing the state law claims is not feasible under these facts. Of course, this Court has no authority, jurisdiction, or inclination to determine issues related to whether the parties should be divorced, and on what grounds, the custody arrangements and orders, or issues related to alimony or maintenance. That is the purpose of § 362(b)(2)'s exception for those actions to proceed despite a bankruptcy filing. What cannot occur without a bankruptcy court order, however, is the dividing of marital property that is also property of the

MEMORANDUM DECISION - 29

bankruptcy estate. *See, e.g.*, *In re Herter*, 456 B.R. at 467 (holding that the automatic stay "does prevent a state court from dividing divorcing parties' property" upon the filing of a bankruptcy by one divorcing spouse). This factor does not weigh in favor of abstention. Ninth, the Court's docket is not burdensome, and this factor does not support abstention, therefore.

Next, the Opposing Parties allege the Debtor is forum shopping with respect to this bankruptcy filing to avoid the state court proceedings and is otherwise using this bankruptcy case as a weapon against Mr. Riekena. Without more, it is not per se impermissible to file bankruptcy after a negative court ruling, as is further addressed below. Moreover, a bankruptcy filing is a significant act for a debtor that carries with it a host of potential consequences and actual obligations as well as the potential for a "fresh start." It remains to be seen what impact this bankruptcy case will have when it comes to property of the bankruptcy estate and Mr. Riekena's rights therein, if any. Bearing this in mind while also considering the arguments and evidence submitted by Mr. Riekena and the Opposing Parties generally, the Court finds this factor is neutral in determining abstention. As to the eleventh factor, no party has sought a jury trial. As such, this factor does not favor abstention. Lastly, the presence of nondebtor parties does not favor abstention because the Debtor and Mr. Riekena are the only parties to the Divorce Case. In contrast, in this bankruptcy case, the creditors of the community have a right to be heard. As such, this factor does not favor abstention.

In summary, in consideration of the *In re Tucson Estates, Inc.* factors, the Court concludes that it will not permissibly abstain pursuant to 28 U.S.C. § 1334(c)(1). Factors 1 and 6 strongly favor declining abstention. And on balance, the factors that are neutral or favor

MEMORANDUM DECISION - 30

abstention are outweighed by the other factors suggesting the Court should decline to abstain.[14]

Therefore, the Court denies the Opposing Parties' request for abstention in favor of the state

court.

Notably, even were the Court to abstain, it is not clear that the state court would give

effect to all portions of the Order for Sanctions it entered, especially with respect to Paragraph 20

and the Marital Home. Two days after the Order for Sanctions was signed by the state court, it

questioned whether it was equitable to award the Marital Home to Mr. Riekena and noted that

the parties would need to be prepared to address that issue at the upcoming trial. Moreover,

Idaho law provides that a property division is not complete in a divorce case until the decree is

entered by the state court. Here, the state court intentionally did not sign the Partial Judgment

and Decree of Divorce, apparently due to lingering concerns to be addressed at trial. The status

and effect of the Order for Sanctions, therefore, is questionable even if this Court does not void it

as a violation of the automatic stay. While this Court has the utmost respect for the ability and

work of the state court to divide marital assets, now that a bankruptcy case has been filed, the

liquidation and administration of estate assets will occur in this Court for the benefit of the

estate, its creditors, and other parties in interest.

### 3.  Motion to Annul the Automatic Stay

#### a.  Law as to Annulment of the Automatic Stay

Next, the Opposing Parties seek an annulment of the automatic stay to give effect to their

postpetition actions, which would also have the effect of avoiding the consequences for any

automatic stay violation that occurred. They note the Court would only have to annul the

---

[14] In future cases, the Court will determine issues of permissive abstention on a case-by-case
basis.

MEMORANDUM DECISION - 31

automatic stay to the extent that it finds that the Opposing Parties have violated it.  As is detailed below, the Court indeed concludes that there were multiple violations of the automatic stay, and as such, the Court will consider their request for annulment of the stay.

A bankruptcy court may grant relief from the stay by terminating, annulling, or modifying, or conditioning the stay "for cause."  § 362(d)(1).  Bankruptcy courts possess "wide latitude in crafting relief from the automatic stay, including the power to grant retroactive relief from the stay," which is also referred to as "annulment of the automatic stay," even where there was a violation of the stay.  *Schwartz v. United States (In re Schwartz)*, 954 F.2d 569, 572-73 (9th Cir. 1992).  When such relief is granted, the violating act is no longer void or an actionable automatic stay violation claim.  *Fjeldsted v. Lien* (*In re Fjeldsted*), 293 B.R. 12, 21 (9th Cir. BAP 2003) (citing *In re Schwartz*, 954 F.2d at 573).

In determining whether annulment of the automatic stay is justified, bankruptcy courts must balance the equities on a case-by-case basis as an exercise of its discretion.  *In re Fjeldsted*, 293 B.R. at 18, 24.

Principally, the bankruptcy court considers "(1) whether the creditor was aware of the bankruptcy petition; and (2) whether the debtor engaged in unreasonable or inequitable conduct, or prejudice would result to the creditor."  *Id.* (quoting *Nat'l Envtl. Waste Corp. v. City of Riverside (In re Nat'l Envtl. Waste Corp.)*, 129 F.3d 1052, 1055 (9th Cir. 1997), *cert. denied*, 524 U.S. 952, (1998)).  The following factors are also considered as part of the framework in determining whether to annul the stay:

> 1. Number of filings;
>
> 2. Whether, in a repeat filing case, the circumstances indicate an intention to delay and hinder creditors;
>
> 3. A weighing of the extent of prejudice to creditors or third parties if the stay relief is not made retroactive, including whether harm exists to a bona fide purchaser;

MEMORANDUM DECISION - 32

4. The Debtor's overall good faith (totality of circumstances test): *cf. Fid. & Cas. Co. of N.Y. v. Warren (In re Warren),* 89 B.R. 87, 93 (9th Cir. BAP 1988) (chapter 13 good faith);

5. Whether creditors knew of stay but nonetheless took action, thus compounding the problem;

6. Whether the debtor has complied, and is otherwise complying, with the Bankruptcy Code and Rules;

7. The relative ease of restoring parties to the *status quo ante;*

8. The costs of annulment to debtors and creditors;

9. How quickly creditors moved for annulment, or how quickly debtors moved to set aside the sale or violative conduct;

10. Whether, after learning of the bankruptcy, creditors proceeded to take steps in continued violation of the stay, or whether they moved expeditiously to gain relief;

11. Whether annulment of the stay will cause irreparable injury to the debtor;

12. Whether stay relief will promote judicial economy or other efficiencies.

*Id.* at 25. These factors "are merely framework for analysis and not a scorecard . . . one factor may so outweigh the others as to be dispositive." *Id.*

The party moving to annul the automatic stay "has the burden to make a *prima facie* showing of cause" initially. *In re Thomason*, 2012 WL 5441736, at *3, *5 (Bankr. D. Idaho Nov. 17, 2021) (quoting *In re Sklar*, 626 B.R. 750, 763 (Bankr. S.D.N.Y. 2021) (other citation omitted)). Upon such a showing, pursuant to § 362(g)(2), the debtor bears the "ultimate burden" in demonstrating that annulment of the automatic stay should be denied. *Oya v. Wells Fargo, N.A. (In re Oya)*, 2019 WL 5390007, at *4 (9th Cir. BAP Oct. 18, 2019) (citations omitted).

Finally, despite the instruction of *In re Fjeldsted* that annulment is not limited to "extreme circumstances," this Court has been mindful in the past that if annulment of the automatic stay becomes "commonplace," then creditors may begin to expect such "*post facto* validation*" to pursue their ends and later ask for forgiveness instead of permission before acting

MEMORANDUM DECISION - 33

in violation of the stay.  *See, e.g.*, *In re Thomason*, 2021 WL 5541736, at *5 (quoting *Soares v. Brockton Credit Union (In re Soares)*, 107 F.3d 969, 977 (1st Cir. 1997)).

> b.  Application of Law to the Opposing Parties' Request for Annulment of the Automatic Stay

Under these principles and considering and applying the factors addressed in *In re Fjeldsted*, the Court declines to annul the automatic stay under these facts.  Under the first factor, the Court concludes that Ms. Jones was aware of the bankruptcy case at the latest on the morning of February 3, 2026, per her own testimony.  Nevertheless, Ms. Jones sent an email later that morning referencing the filed bankruptcy case and asking for the orders and partial judgment she submitted earlier that day to be reviewed and entered by the state court.  (Ex. 107).  Additionally, at the hearing on February 4, Ms. Jones threatened, on the record, to seek attorneys' fees against the Debtor for the filing of this bankruptcy case.  (Ex. 214 at 5, lines 1-5).  These actions violate the automatic stay and were taken with full knowledge of the bankruptcy case.  As will be discussed below, the very act of submitting the proposed orders and the partial judgment (Exs. 104, 106, and 110) were technical violations of the automatic stay even if Ms. Jones did not know of the bankruptcy case.  However, as discussed, there is some dispute about exactly when Ms. Jones learned of the bankruptcy filing, revolving around the 5:30 p.m. (PT) phone call that occurred immediately after Debtor's bankruptcy counsel filed the Notice of Bankruptcy in the Divorce Case.  Mr. Riadh testified that he told Ms. Jones the bankruptcy case had been filed during that call while Ms. Jones testified that she was told that the Debtor *intended* to file the bankruptcy.  Even if Ms. Jones's version is credited, the policy of Bolton Law to have "iCourt" notices go to a general email inbox, accessible only from their office, is questionable.  In effect, this practice prevents any Bolton Law attorney working on a case from home from knowing whether anything has been filed in the case since leaving the office, including a Notice of

MEMORANDUM DECISION - 34

Bankruptcy, unless the state court docket is separately examined. While not knowing what has occurred in a state court case since the last time the docket was checked may work fine in some cases, it does not when a notice of bankruptcy has been filed. Such practice seems especially questionable in this case where the Debtor had threatened to file bankruptcy multiple times. At that point, prudent counsel is put on notice that actions taken without confirming a bankruptcy has not been filed risks violation of the automatic stay. With all things considered, Ms. Jones was aware of the bankruptcy filing at the latest on February 3 yet nevertheless acted in violation of the automatic stay. This first factor strongly supports declining the invitation to annul the automatic stay.[15]

The next factor to consider is whether the Debtor engaged in unreasonable or inequitable conduct, or prejudice would result to the Opposing Parties. The Opposing Parties argue that the Debtor filed the bankruptcy case to avoid the Order for Sanctions oral ruling and that such an action is unreasonable and inequitable, which prejudices Mr. Riekena. As stated in the abstention discussion, without more, it is not per se impermissible to file a bankruptcy in response to a negative court ruling. *See, e.g.*, *Massis v. Gavin (In re Gavin)*, 2022 WL 768144, at *5 (9th Cir. BAP Mar. 14, 2022) ("An eleventh-hour bankruptcy filing on the eve of a potential decisive hearing in state court is not by itself sufficient to find bad faith . . . . Many bankruptcy cases are filed on the eve of adverse events such as foreclosure or the imminent entry of a judgment. Debtors do so for the financial breathing space that bankruptcy provides. This inherently delays the payment of creditors and alone is insufficient to sustain a finding of bad

---

[15] The Opposing Parties' knowledge of the bankruptcy case and continuing on a course in violation of the automatic stay weighs heavily on this Court's analysis and consideration of all the relevant factors as to whether to annul the automatic stay. *See In re Aki Oya*, 2019 WL 5390007, at *3 ("[W]e would be hard-pressed to say that a bankruptcy court abused its discretion in denying retroactive relief if it found that the creditor's knowledge outweighed the other factors.").

MEMORANDUM DECISION - 35

faith."). This is particularly so in a chapter 7 case when the debtor also has other debts. *Cf. In re Padilla*, 222 F.3d at 1193 ("Chapter 7, a liquidation chapter, . . . should be available to any debtor willing to surrender all of [her] nonexempt assets, 'regardless of whether the debtor's motive in seeking such a remedy was grounded in good faith.'") (quoting Katie Thein Kimlinger & William P. Wassweiler, *The Good Faith Fable of 11 U.S.C. § 707(a): How Bankruptcy Courts Have Invented a Good Faith Filing Requirement for Chapter 7 Debtors,* 13 Bankr. Dev. J. 61, 65 (1996)).

On the facts presented, the Court cannot conclude that the Debtor's filing was unreasonable or inequitable, or that Mr. Riekena is prejudiced by it. However, despite Debtor's intention to file for bankruptcy months earlier, the timing of the filing strongly supports the argument that the Debtor was motivated by the oral ruling and filed to avoid the state court ruling which necessarily causes delay. Nevertheless, the appropriate response to such a filing is to engage in the bankruptcy process, which may include seeking relief from the automatic stay, permissive abstention, or other relief, rather than continuing to litigate in a non-bankruptcy forum notwithstanding the bankruptcy. If these actions were taken, this case would likely be on a different footing. Instead, the Opposing Parties are defending against a motion alleging violation of the automatic stay that seeks significant damages and causes even further delay in the Divorce Case. At best, construed most favorably to the Opposing Parties, this factor is neutral in the annulment analysis, and even if the Court considers this factor as favoring annulment, it does not override this Court's analysis of the first factor discussed above. With the two primary factors for annulment considered, the Court concludes that annulment is not appropriate. The first factor weighs heavily in favor of declining annulment and the second is at best neutral.

MEMORANDUM DECISION - 36

In considering the additional factors discussed by *In re Fjeldsted*, the Court is further convinced that annulment is not appropriate under these facts. As to the first two factors, the Court is not aware of any other bankruptcy filing by the Debtor. As to the third factor, there is not a bona fide purchaser impacted by this bankruptcy case; moreover, if the annulment is not granted, the only prejudice to Mr. Riekena the Court can conceive is further delay in the Divorce Case as well as the potential consequences of violating the automatic stay. The Court finds these things do not rise to a sufficient level of prejudice for this factor to weigh in favor of annulment.

Under the fourth factor—the Debtor's "overall good faith"—as discussed above, and considering the totality of the circumstances, the Court cannot conclude this bankruptcy case was filed in bad faith. This factor therefore does not support annulment. The fifth factor supports declining annulment of the automatic stay. The Opposing Parties knew of the bankruptcy case and the automatic stay and nevertheless took actions violating it. This compounded their problems. As to the sixth factor, whether the Debtor is complying with the Bankruptcy Code and the rules, based on the evidence submitted at the evidentiary hearing and a review of this case's docket, it appears that the Debtor is complying with her obligations.

The seventh factor supports annulment because it would not be difficult to restore the parties to the *status quo ante*. The Court need only validate the state court's postpetition entry of the Order for Sanctions and hand over the reins for it to divide property of the bankruptcy estate. Regarding the eighth factor, the cost of annulment of the stay to any of the parties would likely not be significant. This factor is therefore neutral. As to the ninth factor, the Opposing Parties moved for annulment to defend against the Sanctions Motion filed by the Debtor, which motion was promptly filed after the filing of this bankruptcy case. The Court finds this an appropriate response and timely taken by both parties given the prior events in the Divorce Case. This factor

MEMORANDUM DECISION - 37

supports annulment.

As to the tenth factor, whether the Opposing Parties proceeded to take steps that violated the automatic stay after learning of the bankruptcy, as discussed above, the Court concludes that they did.  Instead of seeking relief from the automatic stay upon learning of the bankruptcy filing, they acted first and now seek annulment of the stay to bless those actions.  The Court concludes these facts do not support annulment.  As to the eleventh factor, the Court does not believe annulment will cause irreparable injury to the Debtor; as such, this factor supports annulment.  Finally, as to the last factor, the Court does not conclude that annulment will promote judicial economy.  The Divorce Case has been pending since 2024, although admittedly likely due in part, perhaps large part, to the discovery violations by the Debtor.  However, the Court concludes that at least with respect to property of the bankruptcy estate, the bankruptcy process would best promote judicial economy and other efficiencies.  This factor supports declining annulment.

In summary, after conducting the review of all the factors, in the exercise of its discretion, the Court concludes that on balance, annulment of the automatic stay is not appropriate.  Therefore, the Opposition Motion is denied with respect to this requested relief.

Having considered and denied all relief sought in the Opposition Motion, the Court will now take up the issues with respect to the Sanctions Motion filed by the Debtor.

**B. The Sanctions Motion**

1. Law as to the Automatic Stay, Actual Damages, and Punitive Damages

Upon the filing of a bankruptcy case the automatic stay immediately "operates as a stay, applicable to all entities," which stops the "commencement *or continuation* . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been

MEMORANDUM DECISION - 38

commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title." § 362(a)(1) (emphasis added).  It also stops "the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title." § 362(a)(2).  "[A]ny act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[,]" is also stayed.  § 362(a)(3).  Further, it stops "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title."  § 362(a)(6).  Finally, as relevant here, the automatic stay prevents "the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor[.]" § 362(a)(7).

"The automatic stay is self-executing, effective upon the filing of the bankruptcy petition." *In re Gruntz*, 202 F.3d at 1081 (citations omitted).  It is effective regardless of whether notice of it is given to creditors.  *In re Venegas*, 257 B.R. 41, 45 (Bankr. D. Idaho 2001).  The purpose of the stay is that it temporarily "gives the bankruptcy court an opportunity to harmonize the interests of both debtor and creditors while preserving the debtor's assets for repayment and reorganization of his or her obligations." *Griffin v. Wardrobe (In re Wardrobe)*, 559 F.3d 932, 934 (9th Cir. 2009) (quoting *MacDonald v. MacDonald (In re MacDonald),* 755 F.2d 715, 717 (9th Cir. 1985)) (quotations omitted); *see also Taggart v. Lorenzen*, 587 U.S. 554, 565 (2019) (noting the automatic stay "aims to prevent damaging disruptions to the administration of a bankruptcy case in the short run").

At its root, the automatic stay "is an injunction issuing from the authority of the bankruptcy court, and bankruptcy court orders are not subject to collateral attack in other courts." *In re Gruntz*, 202 F.3d at 1082.  Further, "[a]ny state court modification of the automatic stay

MEMORANDUM DECISION - 39

would constitute an unauthorized infringement upon the bankruptcy court's jurisdiction to enforce the stay." *Id.*  Nevertheless, a party may come to the bankruptcy court to seek relief from the automatic stay.  *See* § 362(d) (stating the grounds for which relief from the automatic stay may be granted).  Importantly, "because only an order of the bankruptcy court can authorize any further progress in the stayed proceedings, it follows that the continuation of [the stayed] proceeding can derive legitimacy only from the bankruptcy court order." *Noli v. Comm'r of Internal Revenue*, 860 F.2d 1521, 1525 (9th Cir. 1988) (citation and quotation marks omitted).

Any actions taken in violation of the automatic stay are void.  *In re Urwin*, 2010 WL 457737, at *2 (Bankr. D. Idaho 2010); *see also In re Wardrobe*, 559 F.3d at 934; *In re Schwartz*, 954 F.2d at 571.

Some actions taken after the commencement of a bankruptcy case are not halted by the automatic stay, however.  Section 362(b) enumerates 29 specific exceptions to the automatic stay, including, as relevant here, the continuation of proceedings concerning child custody or visitation, determinations of domestic support obligations, and dissolution of marriage. § 362(b)(2)(A).

Outside of the listed exceptions to the automatic stay under § 362(b) is an exception adopted by most circuits, including the Ninth Circuit, which authorizes postpetition "ministerial acts." *McCarthy, Johnson & Miller v. North Bay Plumbing, Inc. (In re Pettit)*, 217 F.3d 1072, 1080 (9th Cir. 2000).  Ministerial acts are those that are clerical in nature and "entail no deliberation, discretion or judicial involvement." *Id.*  "[W]hen an official's duty is delineated by, say, a law or a judicial decree with such crystalline clarity that nothing is left to the exercise of the official's discretion or judgment, the resultant act is ministerial." *In re Soares*, 107 F.3d at 974.

MEMORANDUM DECISION - 40

If the automatic stay applies and there has been a violation of it, the issue becomes whether such violation was willful.  A willful violation of the automatic stay:

> . . . does not require a specific intent to violate the automatic stay. Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional.  Whether the party believes in good faith that it had a right to property is not relevant to whether the act was "willful" or whether compensation must be awarded.

*Giochman v. Bloom (In re Bloom)*, 875 F.2d 224, 227 (9th Cir. 1989) (quoting *INSLAW, Inc. v. United States (In re INSLAW, Inc.),* 83 B.R. 89, 165 (Bankr. D.D.C. 1988)); *see also Albert-Sheridan v. State Bar of Cal. (In re Albert-Sheridan)*, 658 B.R. 516, 534 (9th Cir. BAP 2024) (noting "the debtor need not prove that the defendants intended to violate the stay"). "[K]nowledge of the bankruptcy filing is the legal equivalent of knowledge of the automatic stay provided under § 362." *Sansone v. Walsworth (In re Sansone)*, 99 B.R. 981, 984-85 (Bankr. C.D. Cal. 1989) (collecting cases).  The question is not whether the actor intended to violate the stay, but rather, whether the actor intended the action.  *In re Risner*, 317 B.R. 830, 835 (Bankr. D. Idaho 2004).  "Not even a 'good faith' mistake of law or a 'legitimate dispute' as to the legal rights relieve a willful violator of the consequences of the act."  *In re Sansone,* 99 B.R. at 987 (collecting cases).

Once a willful violation of the automatic stay has been established, the injured party "shall recover actual damages, including costs and attorneys' fees, and in appropriate circumstances, may recover punitive damages."  § 362(k)(1); *see also City of Chicago v. Fulton*, 592 U.S. 154, 157 (2021) (noting the scope of the automatic stay and the damages that shall be awarded in the event of a willful violation).  Thus, the bankruptcy court's award of actual damages is mandatory whereas an award of punitive damages is subject to the bankruptcy court's

MEMORANDUM DECISION - 41

discretion.  "The only solace for the creditor who winds up willfully violating the automatic stay without meaning to do so is that a good heart may figure in the assessment of § 362(h) [now § 362(k)] damages."  *Associated Credit Servs., Inc. v. Campion (In re Campion)*, 294 B.R. 313, 318 (9th Cir. BAP 2003).  In particular, "[s]ympathetic facts may be used to avert punitive damages[.]" *Id.*

The amount of actual damages must be proven through competent evidence, and the debtor bears that burden.  *In re Urwin*, 2010 WL 457737, at *4; *In re Risner*, 317 B.R. at 838 n.16.  Such actual damages include costs and attorney's fees, as explicitly listed, as well as damages for emotional distress.  § 362(k)(1); *see Kleidman v. Pearlman (In re Pearlman)*, 2026 WL 1791719, at *7-9, 8 n.13 (9th Cir. BAP June 22, 2026) (noting that attorneys' fees are actual damages in their own right and are recoverable by the debtor "even if the debtor did not suffer another form of injury as a result of the stay violation"); *see also Dawson v. Washington Mut. Bank, F.A. (In re Dawson)*, 390 F.3d 1139, 1148 (9th Cir. 2004) (*abrogated on other grounds*) ("We conclude, then, that the 'actual damages' that may be recovered by an individual who is injured by a willful violation of the automatic stay . . . include damages for emotional distress.") (footnote omitted).

Under the actual damages analysis, it is appropriate for the bankruptcy court to order "an award of all attorney's fees reasonably incurred to remedy a stay violation, including fees in prosecuting the damages action that § 362(k) authorizes."  *America's Servicing Co. v. Schwartz-Tallard (In re Schwartz-Tallard)*, 803 F.3d 1095, 1097 (9th Cir. 2015) (en banc).  Nevertheless, the court must "evaluate the *reasonableness* of claimed attorney's fees in its assessment of § 362(h) [now § 362(k)] damages."  *In re Risner*, 317 B.R. at 839 (emphasis in original).  In doing so, the court must "determine if those expenses could have been mitigated."  *Id.* at 840.

MEMORANDUM DECISION - 42

Emotional distress damages are awardable in the event of a willful violation of the stay. To recover damages for emotional distress under § 362(k), "an individual must (1) suffer significant harm, (2) clearly establish the significant harm, and (3) demonstrate a causal connection between that significant harm and the violation of the automatic stay (as distinct, for instance, from the anxiety and pressures inherent in the bankruptcy process)." *In re Dawson*, 390 F.3d at 1149; *see also Snowden v. Check Into Cash of Wash. (In re Snowden)*, 769 F.3d 651, 656-57 (9th Cir. 2014) (stating the same test). Fleeting or otherwise trivial anxiety and distress are insufficient. *Dawson*, 390 F.3d at 1149.

The second requirement, that an individual clearly establish the significant harm, can be accomplished by providing corroborating medical evidence or non-expert testimony from family, friends, or coworkers. *In re Dawson*, 390 F.3d at 1149-50. Such evidence may not be necessary where the actor's conduct was egregious, or where the circumstances demonstrate that a reasonable person would suffer significant emotional harm. *Id.* at 1150; *In re Snowden*, 769 F.3d at 657. Lastly, there must be a causal nexus between the injury and the automatic stay violation. *In re Dawson*, 390 F.3d at 1150.

Beyond actual damages, the Bankruptcy Code allows for an award of punitive damages "in appropriate circumstances." § 362(k). In the Ninth Circuit, such an award is appropriate where "there's a reckless and callous disregard for the law or the rights of others or where the conduct is malicious, wanton, or oppressive." *In re Snowden*, 769 F.3d at 657; *see also In re Stefani*, 2019 WL 762661, at *8 (Bankr. S.D. Cal. Feb. 15, 2019) (citing *Ramirez v. Fuselier (In re Ramirez)*, 183 B.R. 583, 590 (9th Cir. BAP 1995)). A Court may also award punitive damages when the debtor proves the offending conduct was "egregious, intentional misconduct." *In re Stefani*, 2019 WL 762661, at *8 (citing *McHenry v. KeyBank (In re McHenry)*, 179 B.R.

MEMORANDUM DECISION - 43

165, 168 (9th Cir. BAP 1995)); *In re Hodges*, 2004 WL 4960369, at *4 (Bankr. D. Idaho Dec. 15, 2004).

> Courts have significant discretion in granting or denying punitive damages.  However,

>> no punitive damages should be awarded in the absence of actual damages . . . [because] the automatic stay afforded by section 362 is intended to be a shield protecting debtors and their estates, and should not be used as a sword for their enrichment . . . [and] [t]he incurrence of actual damage, a measurable event, serves as a basis for a determination of an appropriate punitive damage award. Where there is no actual damage, such measure does not exist.

*Koeberer v. California Bank of Comm. (In re Koeberer)*, 632 B.R. 680, 691 (9th Cir. BAP 2021) (quoting *In re McHenry*, 179 B.R. at 169) (quotations omitted).

Although the Code does not provide instruction beyond "in appropriate circumstances," as a fact-specific determination made on a case-by-case basis, some bankruptcy courts utilize the following factors in guiding their decision: "the nature of the creditor's conduct, the creditor's ability to pay, the motives of the creditor, any provocation by the debtor, and the creditor's level of sophistication."  *In re Stefani*, 2019 WL 762661, at *8 (citing *in re Jean-Francois*, 532 B.R. 449, 459 (Bankr. E.D.N.Y. 2015)); *see also Bauer v. Ne. Neb. Fed. Credit Union (In re Bauer)*, 2010 WL 6452899, at *13 (9th Cir. BAP Apr. 8, 2010) (quoting *Prof'l Seminar Consultants, Inc. v. Sino Am. Tech. Exch. Council, Inc.,* 727 F.2d 1470, 1473 (9th Cir.1984)) (listing similar factors in determining a punitive damage award: "(1) the nature of the defendants' acts; (2) the amount of compensatory damages awarded; and (3) the wealth of the defendants"); *see also In re Hodges*, 2004 WL 4960369, at *4 (listing and analyzing the same factors as *In re Bauer*).

Notably, punitive damages may be appropriately awarded when an employer fails to provide a policy or employee training about how to address matters in the event of a bankruptcy filing.  *See, e.g.*, *In re Snowden*, 769 F.3d at 657-58 (upholding a bankruptcy court's award of

MEMORANDUM DECISION - 44

punitive damages due to the creditor's failure to provide a policy or employee training in the event of a bankruptcy case and noting that this is grounds for the court to conclude the creditor acted with "reckless and callous disregard for the law").  Also, in calculating punitive damages, prepetition conduct of the offending party may be considered as to whether there is a consistent disregard for the law.  *See, e.g.*, *In re Kaufman*, 315 B.R. 858, 871 (Bankr. N.D. Cal. 2004) ("Of necessity, the court must consider Defendants' malicious prepetition acts toward [the debtor] that lead up to the [automatic stay violation] to determine whether [the violation] was a 'mere accident,' and to determine whether the [violation] was just an 'isolated incident.'").

When awarding punitive damages, such damages must be reasonably related and proportional to the actual damages.  *Achterberg v. Creditors Trade Assoc. (In re Achterberg)*, 573 B.R. 819, 835 (Bankr. E.D. Cal. 2017) (citing *Hudson v. Moore Bus. Forms, Inc.*, 836 F.2d 1156, 1162-63 (9th Cir. 1987)).  Despite not setting a maximum ratio between punitive damages and actual damages, the Supreme Court has noted that awards within a single digit multiple "are more likely to withstand constitutional scrutiny" while those "in excess of four times the compensatory damages might be close to the line of constitutional impropriety."  *Id.* (citing *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, (2003)).

2.  Application of Law to the Sanctions Motion

Applying these principles to the facts established at the hearing, the automatic stay was violated multiple times by the Opposing Parties with knowledge of the bankruptcy.  By submitting the two proposed orders (Exs. 104 and 110) and the proposed partial judgment (Ex. 106) in the early morning on February 3, after the filing of the bankruptcy case the evening before, Ms. Jones of Bolton Law violated the automatic stay three times under § 362(a)(1) as a continuation of the litigation against the Debtor in the Divorce Case.  Such actions were also a

MEMORANDUM DECISION - 45

postpetition act of enforcement of a judgment obtained before the commencement of the case against the debtor and property of the bankruptcy estate, which is prohibited by § 362(a)(2), as well as an act to collect a claim against the Debtor that arose prepetition, which violates § 362(a)(6).  Further, the orders and the partial judgment as submitted attempted to obtain possession of bankruptcy estate property, including the Marital Home, in violation of § 362(a)(3).  Finally, both the division of debt as proposed in the orders and the partial judgment violated § 362(a)(7) as a setoff of debts owed to the Debtor with the debts the Debtor owed to Mr. Riekena or the community.

The Court understands that these proposed orders and judgment were submitted via one "envelope" in the state court's "iCourt" system, based on the time of the submissions, and Ms. Jones's reference to the "envelope" in her postpetition email (Ex. 107); however, the postpetition submission of the two orders and the judgment each constitute separate violations of the automatic stay.  This is true regardless of whether Ms. Jones was aware of the bankruptcy filing.

However, such violations are only considered willful and create an entitlement to damages if she had knowledge or notice of the bankruptcy.  *See In re Risner*, 317 B.R. at 835 ("Under the case law, it is clear that once a creditor or actor learns or is put on notice of a bankruptcy filing, any actions intentionally taken thereafter are 'willful' within the contemplation of § 362(h) [now § 362(k)].").  "[W]hile notice is relevant to the question of willfulness, it does not matter that [the creditor] did not receive *formal* notice of the petition from the court." *Ozenne v. Bendon (In re Ozenne)*, 337 B.R. 214, 220 (9th Cir. BAP 2006) (citing *Morris v. Peralta (In re Peralta)*, 317 B.R. 381, 389 (9th Cir. BAP 2004)); *see Rushmore Loan Mgmt. Servs., LLC v. Moon (In re Moon)*, 2021 WL 62629, at *8 (9th Cir. BAP Jan. 7, 2021) (finding that an informal phone call was sufficient to constitute actual notice of the bankruptcy);

MEMORANDUM DECISION - 46

*see also Johnson v. Smith (In re Johnson)*, 501 F.3d 1163, 1172 (10th Cir. 2007) (citing *Green Tree Servicing, LLC v. Taylor*, 369 B.R. 282, 286-87 (S.D.W.Va. 2007) (collecting cases)).  As such, the informal phone call by Mr. Riadh to Ms. Jones informing her of the filing of bankruptcy would be sufficient to put her on notice of the filing.[16]  Nevertheless, the Court concludes that it need not determine this disputed issue of fact due to the other violations of the automatic stay that occurred with full knowledge of the bankruptcy (*i.e.* willful automatic stay violations) discussed immediately below.[17]

Ms. Jones first willfully violated the automatic stay later in the morning of February 3, 2026, when she sent an email to the state court clerk (Ex. 107) in which she acknowledged the bankruptcy filing notice and nevertheless requested that the state court enter the orders she submitted postpetition.  This represents a further continuation of a judicial process or proceeding against the Debtor, an enforcement of a judgment obtained before the bankruptcy case, and an act to collect a claim against the Debtor, violating § 362(a)(1), (a)(3), and (a)(6).  In addition, Ms. Jones willfully violated the automatic stay the next day, February 4, 2026, during the proceeding in the Divorce Case when she threatened to seek attorney fees for the filing of the

---

[16] The Court again notes that there is a dispute as to the information relayed during the phone call that bear on Ms. Jones's actual knowledge of the bankruptcy—whether Mr. Riadh informed her of the Debtor's *intent* to file bankruptcy, as Ms. Jones contends is the case, or whether he informed her of Debtor's *actual* filing, as Mr. Riadh contends.  Notably, in a similar case, a bankruptcy court found that a creditor obtained knowledge of the bankruptcy at the time of debtor's informal phone call informing him of such filing despite the creditor's understanding that the debtor would merely be filing in the future.  *In re Locasico*, 77 B.R. 932, 933 (Bankr. S.D. Fla. 1987).  The bankruptcy court found it incredible that the debtor would call the creditor an hour after filing his petition, as demonstrated by the phone bill offered into evidence at the hearing, only to advise him of an intent to file in the future.  *Id.*  This case is similar.

[17] Even if the Court were to construe the submission of the two proposed orders and the proposed partial judgment in the early morning of February 3 as willful stay violations, the Court does not find, in the exercise of its discretion, that those actions would change the outcome here with respect to emotional distress damages or punitive damages.  Actual damages in the form of attorneys' fees and costs are already appropriate with the finding of the other willful violations of the automatic stay discussed below.

MEMORANDUM DECISION - 47

bankruptcy case (Ex. 214 at p. 2, lines 11-15, p. 5, lines 3-5), which threat violated § 362(a)(1), (a)(2), and (a)(6).

Finally, the postpetition entry of the Order for Sanctions (Ex. 112), in the afternoon of February 3, also violated the automatic stay under § 362(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7), and as a result the Order for Sanctions is void and of no legal effect.

The Opposing Parties argue that all of these actions are appropriately classified as "ministerial acts," an exception to the automatic stay as recognized in *In re Pettit*, because the state court's oral ruling on February 2 was the operative act, thereby insulating them from the consequences of their stay violations. They further contend that the state court's oral ruling effectively divided the community property prepetition under the Idaho Supreme Court case of *Katseanes v. Katseanes*, 522 P.3d 1236 (Idaho 2023). The Court disagrees on both counts.

First, the entry of the Order for Sanctions was not a "ministerial act," because it required judicial involvement and discretion, even after the state court's oral ruling on February 2. As one bankruptcy court has put it, "[u]ntil the final judgment was signed [after a prepetition oral ruling] and delivered to the court administrator, the trial court judge retained the discretion to alter his oral ruling in any way he saw fit. Signing of the judgment was not, therefore, a ministerial act and was not excepted from the application of the automatic stay." *McLeod v. Kiraz (In re Kiraz)*, 2012 WL 1120379, at *2 (Bankr. D. Or. Apr. 3, 2012); *see also In re Fontaine*, 603 B.R. 94, 107 (Bankr. D.N.M. 2019) (holding the foreclosure judgment "though submitted prepetition based on a pre-petition oral grant of summary judgment on the record, required the state court judge to exercise judicial discretion prior to its entry" and therefore it did not qualify as a ministerial act); *GemCap Lending I, LLC v. Bateman (In re Naturescape Holding Grp. Int'l, Inc.)*, 2018 WL 5099706, at *14 n.85 (Bankr. D. Haw. Oct. 2, 2018) ("The entry of a

MEMORANDUM DECISION - 48

written order by a judge after an oral ruling does not meet [the ministerial act] standard because, at a minimum, it entails some 'judicial involvement.' This is particularly so because a judge is always free to enter a written order that varies from the oral ruling.") (citing *Rawson v. Calmar Steamship Corp.*, 304 F.2d 202, 206 (9th Cir. 1962)).

The Court acknowledges that other bankruptcy courts have concluded that entry of an order post-oral ruling qualifies as a "ministerial act." *See, e.g.*, *In re Golan*, 600 B.R. 697, 713 (Bankr. S.D. Fla. 2019) (holding that the state court's oral ruling was effective when made and the subsequent entry of a final judgment was a ministerial act); *see also Hendricks v. Wilson (In re Wilson)*, 72 B.R. 956, 958 (Bankr. M.D. Fla. 1987) (holding in an exception to discharge case that the automatic stay was not violated when the district court judge announced his ruling on summary judgment via oral findings of fact and conclusions of law prepetition but entered such order and judgment postpetition). However, this Court does not find these cases persuasive given the ability of the state court judge to modify the signed judgment from the oral ruling, as discussed in *In re Kiraz*, *In re Fontaine*, and *In re Naturescape Holding Grp. Int'l, Inc.*, which is not analyzed or addressed in *In re Golan* or *In re Wilson*. Moreover, the facts and procedural posture in *In re Golan* and *In re Wilson* are distinguishable. *See In re Golan*, 600 B.R. at 705-06 (noting that the debtor previously had demonstrated an understanding that the oral ruling was effective against him, given, among other things, the debtor's failure to list his interest in the real property, which was the subject of the state court's oral ruing, in his schedules); *In re Wilson*, 72 B.R. at 958 (noting a difference between entry of an order by the court postpetition and enforcement by a party postpetition and holding that the summary judgment decision announced pre-bankruptcy would be used in the bankruptcy case to determine an exception to discharge adversary proceeding on a collateral estoppel basis).

MEMORANDUM DECISION - 49

Instead, the Court agrees with the holdings and analysis of the bankruptcy courts in *In re Kiraz*, *In re Fontaine*, and *In re Naturescape Holding Grp. Int'l, Inc.* that the ability to modify the oral ruling in the written judgment or order entered after the oral ruling requires judicial involvement and decision making, which a true "ministerial act" does not.  Had the Order for Sanctions been signed prepetition but only docketed postpetition, this would likely qualify as a "ministerial act" by the court clerk.  *See, e.g.*, *Chey v. Cohen (In re Chey)*, 2010 WL 6466579, at *5-6 (9th Cir. BAP Apr. 12, 2010) (concluding the "ministerial act" exception to the stay applied to the clerk's docketing of a summary judgment order and judgment when the state court judge decided a summary judgment motion via an oral ruling *and signed* a minute order directing winning counsel to submit a proposed order and judgment consistent with the decision); *In re Naturescape Holding Grp. Int'l, Inc.*, 2018 WL 5099706, at *14 n.85 ("The ministerial act exception might conceivably apply if the judge had signed the order before the bankruptcy petition was filed, leaving only the clerk's ministerial obligation to enter the judgment."); *see also In re Pettit*, 217 F.3d at 1075-76 (noting the judge signed the order consistent with the court's oral ruling *before* the bankruptcy was filed and that the clerk had no discretion as to whether to issue a check consistent with this decision).

In contrast in this case, the state court, after orally ruling on the matter, received, evaluated, and signed the Order for Sanctions postpetition on February 3, 2026.  This is not a ministerial act because the court retained discretion to alter the ruling and in signing the Order for Sanctions, exercised judicial discretion and decision-making.  Because there is no exception to the automatic stay applicable here and because relief from the automatic stay was neither sought nor granted prior to the entry of the Order for Sanctions, such an action is a violation of the automatic stay and as a result the Order for Sanctions is void and without legal effect.

MEMORANDUM DECISION - 50

The state court's comments after signing the Order for Sanctions provides even more evidence that this action was not a ministerial act. The state court remarked a couple of times at the February 4 hearing, after signing the Order for Sanctions, that it was concerned and not convinced with respect to the division of the community property, including and specifically referencing the Marital Home. Ex. 214 at p. 2, line 16 – p. 3, line 12. As such, even if this Court were to conclude that the Order for Sanctions is effective despite the automatic stay violation, it is not clear whether the division of the Marital Home has occurred, as provided in the Order for Sanctions, or whether such division represents the ultimate conclusion of the state court, given the indication that some of these issues would be explored further during trial. *See Weinberger v. Croshier (In re Croshier)*, 228 B.R. 468, 474 (Bankr. S.D. Cal. 1998) (holding that the "Family Court's oral ruling indicated more than a mere ministerial act remained[,]" and as such the exception to the automatic stay did not apply).

Additionally, the Court finds that submission of the two orders and the partial judgment by Ms. Jones postpetition do not qualify under the ministerial act exception to the automatic stay. These actions were taken by a party to the matter rather than a court or court personnel and otherwise involves an action that requires deliberation and discretion by the attorney drafting the proposed orders and partial judgment. *See, e.g.*, *Wilmington Sav. Fund Soc'y, FSB v. Fairbanks (In re Fairbanks)*, 2021 WL 3578937, at *5-6 (9th Cir. BAP Aug. 12, 2021) (concluding a foreclosure trustee under Washington law has discretion and would have to deliberate before delivering a deed and that such action by this third party is not a ministerial act); *In re Rinegard-Guirma*, 654 B.R. 390, 401-02 (Bankr. D. Or. 2023) (concluding, in a declaratory relief action in which the creditor sought a preemptive finding by the bankruptcy court as to whether its intended actions *would* violate the automatic stay, that the ministerial act exception to the

MEMORANDUM DECISION - 51

automatic stay would not apply to actions taken by the creditor itself, and contrasting those actions to those taken by the court clerk, as was the case in *In re Pettit*); *cf. In re Wilson*, 72 B.R. at 958 (contrasting actions taken by the court or court clerk to actions taken by parties in the case to submit a proposed order and stating "[t]his situation is significantly different than if one of the parties to the action tries to enforce the decision after it is entered post-petition, or takes some other type of affirmative action without first seeking relief from § 362(a)").

In conclusion, the Court finds that the ministerial act exception of *In re Pettit* is not applicable under the facts of this case.

Finally, the Idaho Supreme Court's decision in *Katseanes v. Katseanes*, 522 P.3d 1236 (Idaho 2023) does not compel a different result. "Although the question whether an interest claimed by the debtor is 'property of the estate' is a federal question to be decided by federal law, bankruptcy courts must look to state law to determine whether and to what extent the debtor has any legal or equitable interest in property as of the commencement of the case." *In re Pettit*, 217 F.3d at 1078 (citing *Butner v. United States*, 440 U.S. 48, 54-55 (1979)).

In *Katseanes* the Idaho Supreme Court determined that an oral ruling in a family law case, in which the court assigned a 401(k) plan to one of the divorcing spouses, was effective between the parties when made. There, the other spouse, after hearing the oral ruling giving the 401(k) to his spouse, liquidated the account and used the funds for his purposes, in direct contravention of the oral ruling. The Idaho Supreme Court had no trouble determining that action was not appropriate, even though the liquidating spouse argued the oral ruling was not effective because the state court judge had a delay in entering a signed order. It held: "Although this is a clear point of law that should require no further explanation, we now affirmatively hold that oral orders are entitled to the same force and effect *between the parties* to the lawsuit as an

MEMORANDUM DECISION - 52

order reduced to writing." *Katseanes*, 522 P.3d at 1242 (emphasis in original).  The Idaho

Supreme Court cited and agreed with analysis of *Noli v. Comm'r of Internal Revenue* in reaching

this conclusion.  In that case, the Ninth Circuit determined that a bankruptcy court's oral ruling

granting relief from the automatic stay was effective between the parties when made despite the

court's failure to enter the order on the docket.  *Noli*, 860 F.2d at 1525.

It is therefore the law that oral rulings are binding on the parties before the court when

made, and an action by a party in direct violation of a court's oral ruling, just because an order

finalizing the ruling had not been entered, violates the law.  However, upon the filing of a

chapter 7 case, another party instantly becomes involved: namely, the chapter 7 trustee.  While

the trustee stands in the debtor's shoes with respect to the debtor's rights and claims, the trustee

has other rights and legal positions independent of the debtor's prepetition position.  For

instance, the chapter 7 trustee is a representative of a bankruptcy estate to be administered for the

benefit of the debtor's creditors.  § 704(a).  In addition, the chapter 7 trustee is vested

immediately upon the filing of a bankruptcy case with the rights of a judgment lien creditor.  *See*

§ 544(a)(1) (providing the trustee "shall have, as of the commencement of the case . . . the rights

and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by

the debtor that is voidable by—(1) a creditor that extends credit to the debtor at the time of the

commencement of the case, and that obtains, at such time and with respect to such credit, a

judicial lien on all property . . . .").  In addition, the trustee may avoid prepetition transfers,

voluntary or involuntary, of the debtor's property for the benefit of the bankruptcy estate's

creditors.  *See, e.g.*, § 544(b) (allowing avoidance of prepetition transfers under applicable law);

§ 547(b) (avoidance of preference payments); and § 548(a)(1) (avoidance of fraudulent

transfers).

MEMORANDUM DECISION - 53

Based on this analysis and applicable bankruptcy law, the Court concludes the holding of *Katseanes* does not compel it to give legal effect to the Order for Sanctions, entered postpetition but based on an oral ruling rendered prepetition, on the grounds that it is a ministerial act and therefore binding on the bankruptcy estate. *Accord Willard v. Willard (In re Willard)*, 15 B.R. 898, 899, 900-01 (9th Cir. BAP 1981) (holding a "divorce court's judgment was valid as between the parties and . . . ineffective against the bankruptcy estate" and such judgment "has no effect on property of the estate in the hands of the trustee"); *see also In re Sandoval*, 619 B.R. 417, 422 (Bankr. C.D. Cal. 2020) (relying on *In re Willard* and stating "in limited respects the Bankruptcy Code may override nonbankruptcy law regarding division and distribution of property, especially when orders in the divorce case are not final as of the date of the bankruptcy petition"). The Trustee became a judgment lien creditor and had other rights and claims to assert upon the filing of this case. As such, when the petition was filed, another party became involved and the postpetition entry of the Order for Sanctions violated the automatic stay and was not effective against the bankruptcy estate or property of the estate to be administered by the Trustee.

### 3. Damages

Having now determined that the automatic stay was willfully violated by the Opposing Parties, the Court will turn to the Debtor's request for damages. The Code mandates that after a finding of a willful violation of the automatic stay, the injured individual "shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." § 362(k)(1).

The Debtor asks this Court to award actual damages, including $10,000 for emotional distress, as well as reasonable attorneys' fees and costs to be determined upon the filing of fee affidavits. Doc. No. 81 at 15-16. Further, the Debtor seeks an award of punitive damages

MEMORANDUM DECISION - 54

totaling $75,000, to be awarded as a joint and several liability of the Opposing Parties.  Finally,

the Debtor seeks an order requiring Ms. Jones and all owners of Bolton Law to complete

bankruptcy specific continuing education classes and requiring Bolton Law to "formally file its

internal bankruptcy compliance policy with this court to determine its adequacy." *Id*. at 16.

The Court has held that the Opposing Parties willfully violated the automatic stay on at

least two occasions after admitting they were aware of the bankruptcy filing, and therefore the

Debtor is entitled to an award of her actual damages, including costs and attorneys' fees pursuant

to § 362(k)(1).  Because the Court has found a willful violation of the automatic stay entitling the

Debtor to an award of actual damages, it need not determine whether the submission of the two

proposed orders (Exs. 104 and 110) and the proposed partial judgment (Ex. 106) are also willful

violations of the automatic stay.[18]

Testimony at the hearing was that the Debtor has incurred attorneys' fees and costs with

respect to the Sanctions Motion.  No evidence as to the amount of fees and costs was provided

during the hearing; however, the Debtor was then in the process of pursuing remedies for the

automatic stay violations.  Therefore, having concluded that the Debtor is entitled to an award of

her attorneys' fees and costs associated with the Sanctions Motion, within fourteen (14) days of

this Memorandum Decision, the Debtor shall file a detailed breakdown of attorneys' fees and

costs incurred by both her bankruptcy counsel and state court counsel, Mr. Riadh, related only to

the automatic stay issues and violations thereof.  The Opposing Parties shall have seven (7) days

from the date Debtor's counsel files their fee application to object to the reasonableness of the

attorney's fees and costs requested.  The Court will then evaluate and award reasonable

---

[18] Nevertheless, the Court has serious concerns regarding the Opposing Parties' internal email noticing procedure and considers it unreasonable to have notifications going to another email, particularly when there is a threatened bankruptcy.

MEMORANDUM DECISION - 55

attorneys' fees and costs under § 362(k)(1).

The next issue is whether the Debtor has proven and is entitled to emotional distress damages as a part of her actual damages under § 362(k)(1).  After considering the evidence and testimony, the Court concludes that emotional distress damages have not been adequately proven and are not appropriately awarded in this case.  Setting aside the September 2025, prepetition voicemail by Ms. Bolton and looking only at the actions which violated the automatic stay, the Court concludes that they do not rise to and establish the right to emotional distress damages. The Debtor testified that she lost sleep, lost weight, and that the stress of the proceedings otherwise negatively impacted her health as she was fighting the recurrence of her cancer.  She further testified that she increased her visits to her therapist and that her doctor took her off chemotherapy because she was not strong enough to continue taking it.  While her situation is indeed unfortunate, no evidence was submitted at the hearing, such as medical bills, to support an award of damages for emotional distress resulting from continuing the Divorce Case despite her bankruptcy filing.  Although the Debtor's own testimony about her emotional distress may be sufficient when faced with egregious conduct by the Opposing Parties or when a reasonable person would suffer significant emotional harm, the Court finds that the conduct of the Opposing Parties was not sufficiently egregious to warrant an award of emotional distress damages.

In reaching this conclusion, the Court has considered the impeachment evidence.  The "Tiktok" video and comment thereto (Ex. 241) does not significantly weigh in the Court's analysis.  While the suggestion by the Opposing Parties was that the Debtor was not emotionally distressed by the February 4 hearing as evidenced by the video she recorded with her counsel, the Court is not convinced that is the case, based on the Debtor's testimony explaining the video and her state of mind.  This evidence therefore did not factor into the Court's analysis.

MEMORANDUM DECISION - 56

The next issue is whether punitive damages should be awarded in this case. Based on the considerations set out in the applicable case law, the Court concludes that punitive damages are not appropriately awarded. Ultimately, the Court cannot conclude that the actions of Ms. Jones rise to the level of "reckless or callous disregard for the law or the rights of others or where the conduct is malicious, wanton, or oppressive[,]" as stated in *In re Snowden*. Therefore, in the exercise of its discretion, the Court declines to award punitive damages.

On this point, however, of most concern to this Court is the voicemail left by Ms. Bolton prepetition (Ex. 113), in which she tells the Debtor that the state court injunction may prevent the Debtor from filing bankruptcy or cause the Debtor to be potentially jailed for the filing of a bankruptcy case. Such a threat is egregious and legally indefensible.[19] Ms. Bolton did not take the opportunity to explain this voicemail to the Court at the hearing, having elected to not attend the last day of the hearing. In the end, the Court is left with a troubling voicemail message and no explanation from the person who left it.

To be clear, the suggestion that this state court injunction (Ex. 228) or a similar one may prevent a person from filing a bankruptcy case or expose that person to sanctions in the state court or worse, jail time, for filing a bankruptcy case, is contrary to fundamental principles of law. *See, e.g.*, *Gonzales v. Parks*, 830 F.2d 1033, 1035 (9th Cir. 1987) ("Filings of bankruptcy petitions are a matter of exclusive federal jurisdiction. State courts are not authorized to determine whether a person's claim for relief under a federal law, in a federal court, and within that court's exclusive jurisdiction, is an appropriate one."); *see also In re Stewart*, 2025 WL 715494, at *1-3 (Bankr. N.D. Ohio Mar. 5, 2025) (invalidating and rejecting a state court divorce

---

[19] Such communication may implicate the Idaho Rules of Professional Conduct (IRPC). *See, e.g.*, IRPC 8.4(c) and (e); IRPC 4.1(a); and IRPC 4.3.

MEMORANDUM DECISION - 57

judgment prohibiting individuals from filing a bankruptcy case via a thorough review of the case law); *In re Westlake Prop. Holdings, LLC*, 606 B.R. 772, 778 (Bankr. N.D. Ill. 2019) (collecting cases, referencing the Supremacy Clause of the U.S. Constitution (Art. VI, Clause 2), and noting "a party may not use a state court injunction to support dismissal of a bankruptcy petition; only federal courts hold the remedies to challenge the filing of a bankruptcy petition").

Additionally, the Court has considered the impeachment evidence in the form of the Debtor's text messages to Mr. Riekena in September 2025 (Ex. 242) in exercising its discretion to deny an award of punitive damages.  The Debtor expressly stated in the messages that it is "illegal" for counsel to threaten her with jail time for filing bankruptcy.  However, the Debtor testified that she was bluffing and still had concerns that jail time or other sanctions may come to pass.  Of concern to the Court is the fact that the text messages generally indicate the Debtor's intent to use her bankruptcy filing as an affirmative action against Mr. Riekena rather than a defensive one.  While that alone is not grounds to dismiss the bankruptcy case for the reasons stated above, it does allow the Court to consider the "provocation by the debtor," as noted in *In re Stefani*, in the exercise of its discretion to deny an award of punitive damages.  Thus, the Court finds that under the applicable case law detailed above, punitive damages are not appropriate in considering the totality of the evidence and circumstances.

The next issue is who among the Opposing Parties should bear the responsibility to pay the actual damages that will be awarded.  The Debtor has sought damages, both actual and punitive, to be awarded jointly and severally against all of the Opposing Parties.  Doc. No. 37 at 10-11.  However, in the closing argument filed by the Debtor, it seems the request to hold Mr.

MEMORANDUM DECISION - 58

Riekena liable for the damages has fallen away, at least as to an award of punitive damages.[20]
Doc. No. 81 at 15-16.

The Court concludes that Bolton Law is the most culpable party, and it should bear the burden of the actual damages, rather than Ms. Jones, a newer associate at the firm, or Mr. Riekena, a party who has hired counsel in this case to represent his interests and who took no personal actions to violate the automatic stay.  It is undisputed that Ms. Bolton is a principal of Bolton Law.  Ms. Jones testified that she had no direction from supervising counsel with respect to an intervening bankruptcy case during the Divorce Case.  Moreover, based on the voicemail message left by Ms. Bolton, if an inquiry had been made to her by Ms. Jones, the Court is not convinced she would have received a legally correct answer.

Finally, despite the request by the Debtor in the Sanctions Motion, the Court declines to require counsel from Bolton Law to complete continuing legal education on bankruptcy topics or to require Bolton Law to file its policy regarding bankruptcy filings for this Court's review.  It is likely, and hoped by this Court, that this process and result alone will modify the course of conduct of Bolton Law to be taken in future cases.

### VI.  CONCLUSION

Based on the above analysis, the Opposition Motion filed by the Opposing Parties is denied in its entirety.  The Sanctions Motion is granted to the extent provided in this Memorandum Decision.  The Debtor shall file an application for an award of attorneys' fees and costs, consistent with this Memorandum Decision, on or before fourteen (14) days from the date

---

[20] As to an award of actual damages, consisting of emotional distress and reasonable attorneys' fees and costs, the Debtor seeks such award "against Respondents."  Doc. No. 81 at 15.  While Debtor's closing brief does not define "Respondents," the Court assumes this includes Mr. Riekena, Ms. Jones, and Bolton Law as the Debtor otherwise differentiates between them in the request for punitive damages as against only "Kourtney Jones and Bolton Law, PLLC." *Id.* at 16.

it was signed.  If Bolton Law objects to the reasonableness of the requested attorneys' fees, it shall file an objection stating the grounds for the objection on or before seven (7) days after the filing of the Debtor's fee application.  At that time, the Court will consider, evaluate, and award reasonable attorneys' fees and costs to the Debtor.

A separate order will be entered following the determination of actual damages.

DATED: July 9, 2026

Brent R. Wilson
U.S. Bankruptcy Judge

MEMORANDUM DECISION - 60